JAMES H. CARR

*v.*

ANSON RISING *et ux.*

SAME

*v.*

SAME.

1. MORTGAGE—*when a deed is.*—Where a person advances money, and at the same time receives a deed and gives back a bond to the grantor for a reconveyance, these facts incline to the belief that the transaction is a loan and a security; but not so, when the conveyance is made by the person to whom the consideration is paid, and the obligation to convey is given to another.

2. SAME.—When the owner of land caused the party holding the legal title to convey the same to the defendant for the consideration of $2,300, the full value of the premises, taking back a bond for a deed upon payment of $2,401, in one year thereafter, and a lease of the premises, and when sued in forcible detainer for possession, filed no bill to restrain the proceeding and have the transaction declared a mortgage until over two years afterward, and permitted the grantee to expend about $1,500 in improvements without asserting any right, and no obligation was given to the grantee for the payment of the money advanced by him, so that he might foreclose if the transaction was intended as a mortgage, and the former owner while in possession directed the assessment of the land to the defendant, and in a former suit in answer to a cross bill, denied that defendant had given the bond for reconveyance; and when the witnesses present at the execution of the deed, when all the parties were present, did not understand the transaction to be a security for money loaned: *Held*, on bill filed to redeem, that the transaction could not be regarded as in the nature of a mortgage, a security for money loaned, but was an absolute sale.

3. HOMESTEAD—*abandonment.*—When a husband and wife had conveyed their homestead to A to secure a debt, and afterward procured A to convey the same to B, who paid the debt and something over, and B thereupon leased the premises to the husband, and gave the wife a bond for a deed to be made upon payment of a given sum within one year, but dispossessed them by forcible detainer before the expiration of the lease, and they left this State and resided about two years in Nebraska: *Held*, that if the hus-

band and wife had any homestead right in the premises, it was abandoned and lost by their removing to and acquiring a home in Nebraska.

APPEAL and WRIT OF ERROR from the Circuit Court of Jo Daviess County; the Hon. BENJ. R. SHELDON, Judge, presiding.

Mr. JAMES H. CARR, *pro se.*

Mr. D. W. JACKSON, attorney for appellees and defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

These two cases have grown out of the same transaction, and the latter is but a continuation of the former, and we shall consider and dispose of them in one opinion. It appears that Mrs. Rising was the owner of the property in controversy, and, for the purpose of borrowing money for the use of her husband, gave a note for $2,057.23, and executed a trust deed to one Myers to secure the same, on the 12th day of December, 1857, payable one year after date; that after the money thus loaned had become due, on the 17th day of December, 1858, defendants in error executed to Myers a warranty deed for the premises, when he extended the time for payment one year. He at the same time executed a bond for a reconveyance of the premises when the money should be paid.

On the 24th of March, 1859, after the money had become due, Anson Rising, Myers, and plaintiff in error, came together, when the latter paid to Myers $2,395, and he thereupon conveyed the premises to plaintiff in error, and he also paid Rising some money. On the 26th day of March, 1859, plaintiff in error executed to Mrs. Rising a bond for a reconveyance, on her paying to him on or before the 24th day of March, 1860, the sum of twenty-four hundred and one dollars, and a strict performance by payment is made of the essence

of the contract. From this bond was excluded one and a half acres of the tract. Defendants in error remained in possession until some time in the month of August of the same year, when plaintiff in error recovered the premises in an action of forcible entry and detainer. Defendants in error soon after removed to and settled in Nebraska.

In December, 1862, defendants in error filed a bill in chancery claiming a homestead right in the premises, and that the conveyance by Myers to plaintiff in error, although a deed in form, was intended as and was but a mortgage; but the bill did not ask an account or pray for leave to redeem. Plaintiff in error answered the bill, denying their right to a homestead, and claiming that the transaction was intended to be, or was in fact, an absolute conveyance. He also filed a cross bill, in which he alleged that he had made an absolute purchase of the premises; that Rising had improperly possessed himself of the bond given by Myers to Mrs. Rising; prayed that it might be surrendered up and canceled, and that his title be confirmed as an absolute fee simple. On a hearing, the court below decided that defendants in error were not entitled to a homestead in the premises, but held that the deed from Myers to plaintiff was a mortgage, but rendered no decree for an account, the payment of the money, or leave to redeem; and the suit went from the docket.

No change occurred in reference to the matter, nor were any steps taken until the 10th of October, 1867, when defendants in error filed a bill, wherein they set forth the facts; and, that after plaintiff in error received from Myers the conveyance, they received a lease from plaintiff in error for sixteen months, but were dispossessed on the 20th of August, 1860, by proceedings in forcible detainer. They claimed in the bill that the conveyance to plaintiff in error was only a mortgage. They pray that they be permitted to redeem; that an account of the rents and profits be taken, and upon payment of the balance, plaintiff in error be required to reconvey the premises to them. He filed an answer denying that he loaned them any money, but insisted that he had purchased the property ab-

solutely. On a hearing, the court below granted the relief sought, and ordered an account to be taken and stated; and on the report of the master having been filed, and exceptions thereto being overruled, a final decree was entered, requiring a reconveyance upon payment of the sum found due. The record of both cases is brought to this court, and errors are assigned thereon.

The first question we shall consider is, whether the decree rendered in the first case is sustained by the facts in evidence on the hearing. If that decree was proper, then it follows that defendants in error had a right to redeem, and that question could not be litigated on the trial in the second case. In form, this was a purchase by plaintiff in error, and a re-sale; but it is urged that the facts show it to have been a loan of money by him, and the conveyance only received as a security. Tisdale, the father of Mrs. Rising, testified that money was borrowed of Myers, and Mrs. Rising gave a deed of trust on the premises to secure its payment; that, subsequently, she and her husband conveyed the premises to Myers, and that they borrowed over two thousand dollars of plaintiff in error, and Myers conveyed to him. That Rising sold one and a half acres of the tract to plaintiff in error. He says the rate of interest was twenty-five per cent. But this witness is unable to state the amount advanced by plaintiff in error. He says he thinks it was $2,100 or $2,200, but is not certain. He says it was his understanding plaintiff was to give a bond for a reconveyance, but does not know that it was given. He says it was almost impossible to sell land for cash in that neighborhood at the time the transaction occurred.

Myers testifies as to his conveying the land to plaintiff in error on the written request of Mrs. Rising, but seems to have had no information in regard to the intention of the parties. Some four or five witnesses fix the value of the property at the time, from $1,800 to $2,500, but none fix a higher valuation upon it. Platt, who drew the deed to plaintiff in error, seems to have the clearest recollection of the transaction of any of the witnesses so far as they come to his knowledge. He

says, when the deed was made, Rising refused to take currency unless it was made equal to specie, and that one per cent was added for that purpose; that he drew a check for the amount, and it was received by Myers; that he paid for plaintiff in error as the consideration for the land, $2,242.71 to Myers, and to him another sum of $95, and to Rising for his wife, $57.29, making an aggregate of $2,395. He says there was a contract between defendants in error and Myers to sell him a part of the land, and that plaintiff in error paid him and took up the contract. That some difficulty occurred after the check was delivered and the deed executed, on account of Myers' bond, and Mrs. Rising's written consent having been taken by some one not entitled to receive them; and Myers swears that they were secretly taken and retained by Rising.

Here are found several strong circumstances indicating that it was regarded by the parties as an absolute sale. First, they gave it that form. Next, plaintiff in error paid the full value of the property. Again, Rising leased the premises from plaintiff in error. Not only so, but when he procured possession defendants in error filed no bill to restrain the proceeding, or to have the transaction declared a mortgage, for something more than two years afterward, and removed to and settled in another State. They permitted plaintiff in error to make improvements, amounting to about $1,500, on the premises, without asserting any right. We can hardly suppose he would have made such improvements if he had supposed he held only a mortgage. This all points strongly to the deed as being absolute, and not conditional. Again, no obligation was taken by plaintiff in error for the payment of the money. If designed to be a mortgage, common prudence would have suggested a different course, as we can not suppose a person would be willing to leave himself indefinitely in the position that he could be compelled to convey or release the premises from a mortgage, and yet be wholly unable to enforce payment.

Nor is the case so strong as where a person advances money, receives a deed, and at the same time gives back a bond to the

grantor for a reconveyance. That of itself inclines to the belief that it was intended as a loan and security. But not so as in this case when the conveyance is made by a person to whom the consideration is paid, and the obligation to convey is given to another. But it is in form an ordinary purchase and resale. *Taintor* v. *Keys*, 43 Ill., 332. Notwithstanding Tisdel's testimony, which is indefinite, uncertain, and seems largely to consist of his conclusions, and not in a statement of facts, we think this *prima facie* sale has not been shown to have been a loan and security.

Again, Tisdel swore it was a loan at twenty-five per cent. All of the facts in the case contradict this supposition. One year's interest at twenty-five per cent would be a trifle over five hundred and ninety-eight dollars. In this the witness is evidently mistaken, or has given a false version of the transaction, and renders his own evidence conflicting. Even take the lowest amount he names as having been paid, and one year's interest, at that rate would amount, principal and interest, to $2,625, and at the higher to $2,650. But Platt's version is the more clear, consistent, and reasonable. Tisdel having been so much mistaken in this matter, we must, in the light of the other circumstances, conclude his evidence should not control.

Again, men who loan money on real security do not usually advance an amount fully equal to or greater than the value of the property pledged, especially where the borrower is insolvent, as Rising was in this case. This is strong evidence that plaintiff in error really became the purchaser, and this view is strongly supported by the other facts of the case.

Why should Rising, while occupying the property, have directed it to be assessed for taxation to plaintiff in error if he considered himself as the owner? Such an act is inconsistent with ownership. Nor is it usual for mortgagors to lease mortgaged premises from the mortgagee before a default has occurred. The fact that Rising took a lease from plaintiff in error is strong evidence that he regarded the transaction as a sale, with a privilege to repurchase at an advance. All of these facts support

the theory that it was not a mortgage, and render it almost certain that it was an absolute sale.

Again, defendants in error in their answer to the cross-bill filed by plaintiff in error deny that he gave to them, or either of them, a bond for a reconveyance. From this denial, and from the fact that they had filed their bill claiming a homestead right in the premises, and out of which the cross-bill grew, it seems apparent that they were then repudiating the transaction as a mortgage, but insisting upon it as an absolute sale. From this answer, we must conclude that defendants in error were endeavoring to prevent the transaction from being treated as a mortgage, or why deny the existence of the bond, which is now regarded as the strongest evidence to stamp it a loan and security? It would hardly be equitable after such a denial to permit the bond to be asserted to establish the opposite of what was then denied to exist in fact.

If the parties understood and intended it to be a mortgage, it is strange that neither Platt nor Myers was informed of the fact, when they were active agents in accomplishing what was done. It is not reasonable to suppose that it could have been intended as a mortgage, and they not have known the fact. One of them made the conveyance and the other drew the papers when all of the parties were present, and their opportunities, it may be inferred, were ample to have known the fact, if it had been true. If intended as a mortgage, no possible reason could have existed for concealing the fact, but, on the contrary, it would seem but natural that Rising would have desired to have as large a number of witnesses of the fact as could have been readily procured.

As to the refusal to grant the relief in the first suit brought as to the homestead right, there was no error in the decree. Even if such a right existed when defendants in error were ejected from the premises, it was abandoned and lost by removing to and acquiring another home in Nebraska, where they had resided over two years, before asserting their claim. It can not be held under the statute that a party may, after acquiring a new home in another State, still rely upon the statute as

though his former home had not been abandoned. The court below, therefore, did right in refusing to decree the claim to the homestead, which is affirmed, but erred in declaring the deed to be a mortgage, and for that reason and to that extent the decree must be reversed.

On the hearing of the second cause the record and decree in the former suit were read in evidence to support the bill, together with the former depositions, and the deposition of Tisdel again taken, and the deposition of Anson Rising. The deposition of plaintiff in error was also read in evidence. A large amount of evidence was also heard on the question of improvements and rents of the premises. Tisdel swears substantially to the same facts as on the former trial. Rising testifies that it was a loan at twenty-five per cent, and the deed was given as security; that plaintiff in error was to reconvey upon being paid $2,800 within one year; that he sold plaintiff in error one and a half acres of the tract for $300, which was applied to the interest, and a bond given for a reconveyance upon the payment of $2,500 within one year from its date. Now, in this he is contradicted by the bond, which only requires the payment of $2,401. Thus it is seen that he is mistaken or has sworn recklessly for the purpose of advancing his own interest. Again, plaintiff in error swears it was an absolute sale, and that he purchased the one and a half acres from Myers who held a bond for its conveyance, and for $200 paid him, he assigned the agreement to plaintiff in error. He says he was to give $2,500 for the property. That he paid Myers $2,242.71 for defendants in error. Paid Myers $200 for the acre and a half of the ground, and $57.29 to defendants in error, which makes the sum he says he was to pay. In his statement of the first and last amounts he is corroborated by Platt, and is supported by him in the fact that money was paid to Myers outside of the sum paid for defendants in error, but they differ as to the amount of that payment. The additional proof heard in the second case fails to change the conclusion arrived at on the evidence heard on the first trial. Upon a careful examination of all the testimony in the case we are sat-

isfied that it fails to establish the fact as claimed that the deed was given as security in the nature of a mortgage, but on the contrary we are convinced that it was intended to be absolute. The decree in the former suit is modified as herein stated, and in the latter the decree is reversed, and the causes are remanded.

*Decrees reversed.*

SHELDON, J., having tried these cases in the court below, took no part in their decision.