## FLETCHER v. NORTHCROSS.

### No. 19,007; February 17, 1893.

#### 32 Pac. 328.

**Mortgage or Conditional Sale.**—Foreclosure Proceedings were **Dismissed**, and the mortgagor executed a deed to the mortgagee, pursuant to an agreement whereby the mortgagee was to satisfy the mortgage of record, and the mortgagor was to have the privilege of selling the land within six months thereafter, and retain all moneys which he might receive therefor over and above a specified sum, which he was to pay to the mortgagee. Held, that, in view of the facts that the mortgagor made no promise to pay any sum to the mortgagee, that the sum to be paid the mortgagee in case of a resale was several thousand dollars less than the mortgage debt, that no interest was to be paid by the mortgagor, and that the mortgagee at once took possession of the premises, the transaction must be construed, not as a mortgage, but as a conditional sale, to become absolute on the mortgagor's failure to sell the land within the time specified.

APPEAL from Superior Court, Orange County; J. W. Towner, Judge.

Action by John R. Fletcher against James W. Northcross to recover the possession of real estate. From a judgment in plaintiff's favor, defendant appeals. Affirmed.

Anderson & Anderson, F. W. Sanborn and Julian P. Jones for appellant; Victor Montgomery and C. C. Hamilton for respondent.

TEMPLE, C.—This action was brought to recover the possession of real estate under section 380 of the Code of Civil Procedure. Two defenses are pleaded. The first simply denies plaintiff's title and right of possession. In the second, it is shown that plaintiff claims title under and from defendant, and it is averred that the deed from defendant, under which plaintiff claims, was intended and received as security for a loan, and is therefore a mortgage. Defendant alleges that on the first day of August, 1890, he was indebted to plaintiff in divers sums upon certain notes, secured by mort-

gage upon the premises described in the complaint. That the amount of the indebtedness was $21,000. The mortgaged premises were then worth $35,000. That defendant desired to sell, and from the proceeds to pay plaintiff's demand. That he might be able to give a clear title, it was agreed between himself and plaintiff that the mortgages should be nominally satisfied of record, and, in lieu of them, defendant should execute to plaintiff an absolute deed, and plaintiff would then reconvey to defendant by a deed, which should be placed in escrow, to be delivered to defendant upon payment of $21,000 to Balcom, who was to hold the deed. That this, agreement was carried out, and a deed conveying the premises to defendant was executed, and placed in the hands of Balcom, with written directions to deliver the same to defendant on receipt of $21,000, on or before February 1, 1891. That it was agreed that, upon sale of said premises, plaintiff should have $21,000 of the proceeds, and no more, and that the residue, if any, realized from the sale, should belong to defendant. That defendant diligently endeavored to procure a purchaser for said land, but was unable to consummate a sale. That the plaintiff, in violation of his obligation, has at all times since the execution of the deeds endeavored to discourage, and did discourage, many intending purchasers from purchasing said land, and, in consequence of such acts of plaintiff, defendant has been unable to procure a purchaser. In reference to this defense the court finds that on the first day of August, 1890, defendant was indebted to plaintiff in divers sums, evidenced by certain promissory notes, and secured by mortgages upon the land in controversy; that there was due upon the mortgages between $26,000 and $27,000, that an action brought by plaintiff was then pending to foreclose the mortgages; that defendant, in consideration of having the indebtedness satisfied and the mortgages discharged, conveyed the land to plaintiff, who thereupon canceled, satisfied, and discharged the indebtedness and the mortgages, and dismissed the suit pending for foreclosure, and at the same time agreed that the defendant should have, for the period of six months thereafter, the right and authority to sell said land, and to retain all moneys he might receive therefor, over and above $21,000, and might, during that period, retain possession of the house and barn on the premises, and, in pursuance of this agree-

ment, executed a deed conveying the land to defendant, and placed the same in escrow in the hands of Balcom, to be delivered to defendant upon receipt of $21,000, if paid prior to February 1, 1891, and, in case said sum was not paid by that time, the deed to be surrendered to plaintiff; that no sale was made by defendant, and shortly after the first day of February, 1891, the deed was surrendered to plaintiff in pursuance of the understanding; that all the other allegations in the answer were untrue. Judgment was thereupon entered for plaintiff. The defendant appeals from the judgment, and from an order refusing a new trial.

The question presented is whether the transaction must be considered a mortgage, or an actual sale to plaintiff, with an agreement to resell at a certain price. The difficulty of determining whether the transaction is not a mere device to obtain security for a debt, and at the same time to escape the expense and delay of a foreclosure, has often been recognized. If A conveys to B a tract of land, in consideration of a sum of money due from or then paid to the grantor, and agrees to reconvey at a specified time, if the money is repaid, with interest, the grantor in the meantime remaining in possession, it is difficult to comprehend a motive for the transaction except upon the theory that the conveyance is security for a debt. Yet it is said: "To deny the power of two individuals capable of acting for themselves to make a contract defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price, and at a specified time, would be to transfer to the courts of chancery in a considerable degree the guardianship of adults, as well as infants": Conway's Exrs. v. Alexander, 7 Cranch (U. S.), 237, 3 L. Ed. 321. In Henley v. Hotaling, 41 Cal. 22, the negotiations and the agreement were with the agent of the borrower for a loan; but it was discovered that the warrant of attorney did not authorize the agent to execute a mortgage, but did authorize a sale. So it was arranged that the agent should make an absolute conveyance, defeasible on a day named, by repayment, with interest. This court held that it was not a mortgage, on the ground that there was no agreement, express or implied, to pay. It is said: "If there is no debt there is no mortgage. We look in vain in this case to

find any evidence of a promise on the part of Storms to re-pay the purchase money, or of the existence of a debt of any kind from him to Hotaling.'' And it is further said that, in case Hotaling brought suit to foreclose, ''the answer that there was no promise, either express or implied, on the part of the alleged mortgagor, would have been a complete bar.'' To the same effect are Farmer v. Grose, 42 Cal. 169; Page v. Vilhac, 42 Cal. 75; Montgomery v. Spect, 55 Cal. 352; Man-asse v. Dinkelspiel, 68 Cal. 404, 9 Pac. 547. The case at bar is not nearly as close a case upon this point as either of the cases above cited. In all of those cases it was plausibly argued that there was an implied promise to pay, which would create a liability at least to the extent of the property conveyed. There may be a mortgage in which the mortgagee is restricted to his lien, and cannot recover a judgment for deficiency. In this case, in addition to the fact that there is no promise to pay, there are many circumstances which rebut the presumption that either party supposed that the deed was held as security. (1) The payee had commenced suit to foreclose, because he believed the security insufficient. Fur-ther time would have been given if further security could have been had. (2) The amount to be paid was not the amount of the debt, but more than $5,000 less. (3) No in-terest was to be paid. (4) The grantee took immediate pos-session. True, the defendant continued to occupy the house and barn under the agreement for six months, but the bene-ficial use passed at once to the grantee. (5) It was supposed that it would cost $1,500 to cultivate the orange orchards. As defendant was authorized to sell at any time, plaintiff might not be able to gather the crop. In that case he would lose this expense. And (6) all the circumstances show that the arrangement was simply in pursuance of an agreement to give defendant the exclusive privilege of selling as plain-tiff's agent for six months, with the right to retain all over $21,000 as commissions. Such, indeed, are the allegations of defendant's answer, and such is the testimony. Plaintiff thought the land only worth that sum, and was willing to take that for it. Defendant naturally valued it much higher, and was sure he could get more for it. Nothing was more natural, then, than that plaintiff should employ defendant to sell. The option was for a limited period. If the pre-

sumption which it seems to me naturally arises in such transactions can be rebutted, I think it is in this case. There was no error in not finding whether the land was worth $35,000 or not. If true, this was a mere probative fact. Nor do I think the record shows that there was any evidence that it was worth that sum. I think the judgment and order should be affirmed.

We concur: Vanclief, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.