## CHARLES H. JEFFREYS et al.

### *v.*

## SELINA A. CHARLTON et al.

[Submitted January 23d, 1907. Decided January 25th, 1907.]

1. There is no legal objection to an absolute conveyance of land and' a simultaneous agreement by vendee to reconvey the land to vendor upon terms agreed upon. But equity is privileged to inquire beneath the external forms and to ascertain whether or not, in view of all the circumstances disclosed, the transaction was an absolute sale, or whether the conveyance was in fact intended as a security for the payment of the money specified in the agreement for reconveyance.

2. In the determination of the intention of the parties in such transactions, the fact that no obligation existed upon the part of vendor to pay the amount fixed as the price for reconveyance, is almost wholly inconsistent with the idea that the transaction was intended as a mortgage security. The fact that the amount paid by vendee was practically the entire value of the property is also inconsistent with the idea that a mortgage security was intended.

3. Where, in such case, the agreement for reconveyance was in form and intent an option agreement wherein vendee extended to vendor the option to purchase within a specified time upon specified terms, such option must be complied with by the payment or tender of payment of the amount specified within the time named, or all rights under the option will be lost.

4. The fact that the conveyance was made by vendor at a time when the property was about to be sold under process of execution, and that the conveyance was made with a view that vendee should purchase the property at the approaching judicial sale at a price named and should extend to vendor the option of repurchase at that price, in no way enlarges the rights of vendor, where it appears from all the circumstances of the case that the transaction was intended by the parties as a sale and an option of repurchase, and not as a security for the repayment of the expenditures to be made by the vendee.

On bill and cross-bill.

The bill is filed by complainants as executor and devisees of Lewis E. Jeffreys to remove a cloud from the title to certain real estate, which cloud consists of an outstanding agreement dated July 3d, 1903, wherein complainants' testator agreed to extend to cross-complainant an option of purchase of the land, upon the terms specified in the agreement, for a period of two years from the date of the agreement. Defendant, by way of cross-bill, claims that under the agreement in question she is entitled at this time to an ascertainment of the money due to complainants under the terms of the agreement, and to a conveyance to her by complainants of the land in question upon the payment by her of the amount so ascertained. The agreement in question is an instrument wherein cross-complainant conveyed to complainants' testator certain real estate, and complainants' testator, in the same instrument, extended to cross-complainant an option of purchase, upon the terms stated, for a period of two years from the date of the agreement.

*Messrs. Bourgeois & Sooy,* for the complainants.

*Mr. Harry W. Lewis,* for the defendants.

LEAMING, V. C.

The primary question for determination is whether the transaction in question was operative as a mortgage from cross-complainant to complainants' testator, or whether it was operative as an absolute sale from cross-complainant to complainants' testator, with only an option of repurchase preserved to cross-complainant. If the former, cross-complainant's equity of redemption must be preserved to her; if the latter, cross-complainant was obliged to comply with the terms of the option within the period specified.

That part of the agreement wherein the right to repurchase is granted to cross-complainant is, in form, strictly an option, and if the language of the instrument is to be taken as the sole criterion to determine the rights between the parties, there is no equity of redemption preserved to cross-complainant in the event of her failure to comply with the terms of the option; but equity is privileged to inquire beneath the external forms in determining questions of this nature, and the controlling inquiry is whether or not, in view of all the circumstances disclosed, the transaction was an absolute sale, or whether the conveyance to complainants' testator was intended as a security to him for the repayment of the money set forth in the terms of the option. The determination of this question must, to a large extent, depend upon the circumstances of the individual case, for the question necessarily turns, in all such cases, upon the real intention of the parties as shown upon the face of the writings, or as disclosed by extrinsic evidence. Where a doubt exists the tendency of the courts, from motives of policy, has generally been in favor of treating the transaction as a mortgage security. In the present case death has intervened to deny to the court the benefit of the testimony of the parties to the transaction touching much that transpired at the time of the execution of the agreement, but sufficient evidence has been produced to disclose, with great fullness, the situation of the parties at the time and the purposes sought to be accomplished by the agreement made.

The property in question, at the time of the agreement, was about to be sold under decree of foreclosure, and the conveyance in question was made to complainants' testator with the view

that he should purchase the property at the foreclosure sale and bind himself to convey the property to cross-complainant, providing cross-complainant should, within two years, pay to complainants' testator for the property the amount specified in the option. At the date of the agreement there was no indebtedness from cross-complainant to complainants' testator to be secured by this transaction. The agreement executed between the parties in no way bound cross-complainant to pay to complainants' testator the amount specified in the option. When, in a transaction of this nature, there is no obligation cast upon vendor to pay the amount fixed upon as the price for reconveyance, the conditions are almost wholly inconsistent with the idea of a mortgage security or a pledge to secure a debt. Professor Pomeroy (*Pom. Eq. Jur.* § *1195*) says: "If no such relation whatsoever of debtor and creditor is left subsisting, then the transaction is not a mortgage, but a sale and contract of repurchase." In the note to the text it is said: "The practical test is whether there is a liability, notwithstanding or independent of the conveyance and contract of reconveyance, which the grantee can enforce against the grantor." In *De Camp* v. *Crane, 19 N. J. Eq. (4 C. E. Gr.) 166, 171*, Chancellor Zabriskie says: "I admit the force of the position, so ably urged by counsel for the defendants, that when the question is whether the transaction constitutes a mortgage, or is a sale with an agreement to reconvey, the fact whether there is a continued debt or liability of the mortgagor is very important. It is difficult to conceive of a mortgage, which in its very essence is a pledge as security for a debt, without someone being liable for the debt. But I am not willing to say that there can be no mortgage without a debt, or someone being bound, at all events, to pay the money. A mortgage may be expressly made in that manner."

I am impressed, however, that where the transaction, in order to be treated as a mortgage security, must be so treated solely as the result of inferences drawn from existing circumstances contrary to the express stipulation of the parties, such inference cannot be logically indulged in the absence of an obligation upon the part of the vendor to pay. It is contended upon the part of cross-complainant that the agreement in question con-

templates a payment by cross-complainant of deficiencies arising from rentals; but I understand the language of the agreement, taken together, to mean that cross-complainant must make such payments to preserve the existence of her option during the two years, or otherwise lose it. I do not find in the agreement or transaction any stipulation or element upon which complainants' testator could base a claim against cross-complainant for the repayment of any part of the money which he expended in this transaction.

Another criterion helpful in the determination of the true spirit of a transaction of this nature is the relationship between the money paid and the value of the property. In the present case the evidence satisfies me that the expenditures made by complainants' testator were practically the full value of the property in question, or if not the full value, then so nearly the full value as to negative any suggestion of a loan on mortgage security. There is no legal objection to a transaction of the nature which this transaction assumed. Cross-complainant could lawfully convey her equity of redemption and could simultaneously receive from her vendee an option of purchase upon specified terms, and if the transaction was, in spirit and intent, what it purported to be on the face of the papers executed, then cross-complainant's equity of redemption in the premises was lost, and a title to the premises could only be acquired by her through a compliance with the terms of the option agreement. *Wallace* v. *Johnstone, 129 U. S. 58, 65; Slutz* v. *Desenberg, 28 Ohio St. 371*; see, also, *Pom. Eq. Jur.* § *1194, note 1, note "a."*

In *Merritt* v. *Brown, 21 N. J. Eq.* (*6 C. E. Gr.*) *401, 405,* the court of errors and appeals treated a transaction somewhat of this nature as one wherein the right of redemption would not be lost through failure upon the part of the vendor to pay on a day specified, but the view there taken was the result of a conclusion reached from testimony showing that to have been the intention of the parties.

My conclusion is that the instrument in question must be treated as correctly disclosing the true intention of the parties, and that the only right reserved to cross-complainant under that agreement was an option of purchase, and that her rights in the

premises in controversy were lost unless she complied with the conditions of that agreement.

It is claimed upon the part of cross-complainant that she did comply, or offered to comply, with the provisions of the option agreement. If the failure upon the part of cross-complainant to pay to complainants' testator the money due to him occurred by reason of an honest difference between them as to the amount with which cross-complainant was properly chargeable under that agreement, such difference would undoubtedly excuse the non-performance within the time specified; but the evidence fails to convince me that such was the fact. The testimony of Mr. Wootton, who visited complainants' testator in behalf of cross-complainant, is to the effect that complainants' testator claimed, at that date, $3,552.72 as due to him. The testimony of the widow of complainants' testator, which testimony is not questioned by Mr. Wootton, is to the effect that in arriving at the amount due to complainants' testator, his books and accounts were fully examined to ascertain the exact figures. There is no testimony showing that a protest was made, or that any dispute arose touching the amount claimed by complainants' testator. I am compelled to conclude that the failure of cross-complainant to comply with the terms of the option agreement was due to her neglect or inability to raise the money necessary for that purpose.

The cross-bill of defendant is for specific performance. The relief appropriately sought, under the claim now made by cross-complainant, would be that of a decree for the redemption of the property and for an accounting to ascertain the amount due. I have, however, treated the cross-bill as sufficient, under the prayer for general relief, to afford cross-complainant any relief which she might be entitled to in the premises. A decree will be advised for complainants.