EMMA B. DEAN, Appellant and Respondent, v. J. H. SMITH, Respondent and Appellant.

(204 N. W. 987.)

**Mortgages — transfer of realty, in form warranty deed, made subject to defeasance, may be shown by evidence aliunde.**

1. The fact that a transfer of real property, in the form of a warranty

---

Note.—(2) Burden of proof that deed was intended to operate as a mortgage, see annotation in L.R.A.1916B, 185; 19 R. C. L. 263; 3 R. C. L. Supp. 927; 4 R. C. L. Supp. 1263; 5 R. C. L. Supp. 1031.

(5) Continuance of debt as to whether absolute deed is mortgage, see 19 R. C. L. 257.

(7) Adequacy of consideration as tending to show deed not mortgage, see 19 R. C. L. 259.

deed; was made subject to a defeasance, may be shown by evidence, aliunde, except as against subsequent purchasers or encumbrancers for value and without notice, under § 6729, Comp. Laws, 1913.

**Mortgages — burden to overthrow presumption that warranty deed is unconditional conveyance is on one asserting contrary.**

2. A warranty deed, absolute upon its face, is presumed to be an unconditional conveyance. The burden to overthrow this presumption is upon him who asserts the contrary and the rule is that the proof, to be sufficient, must be clear, satisfactory, and specific, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt. ,

**Mortgages — on establishing by competent evidence that deed, absolute on face was intended as mortgage, court will give effect to such intention.**

3. When it is established by clear, satisfactory and convincing evidence that a deed, absolute upon its face, was intended as a mortgage, the court will give effect to such intention; in case of doubt, upon the evidence, the doubt will ordinarily be resolved in favor of a mortgage.

**Mortgages — "mortgage" is usually security for payment of debt; agreement to pay debt or discharge obligation owing to mortgagee is essential to mortgagee.**

4. A mortgage is usually a security for the payment of a debt; it is an incident of an existing obligation. It is essential that there be an agreement, express or implied, on the part of the mortgagor, or other person in whose behalf the mortgage is executed, to pay a debt, or discharge an obligation in some form, owing to the mortgagee.

**Mortgages — if debt continues as such, transfer by conveyance, absolute in form, will be considered mortgage.**

5. One of the strongest and surest tests as to whether a conveyance, absolute in form, shall be deemed a security conveyance, is the continuance of the indebtedness or its extinguishment. If the debt continues as such, the transfer is a mortgage.

**Mortgages — absence of written evidence of debt indicates sale rather than conveyance for security; after conveyance no recognition of debtor and creditor holds possession without paying interest or rent goes to show that there is agreement for repurchase, and not mortgage.**

6. The absence of any written evidence of a debt is a circumstance, tho not conclusive, indicating a sale rather than a conveyance for security. If, in the subsequent transactions of the parties, there is no recognition in any way of the relation of debtor and creditor, and the vendee for a considerable period holds possession without paying interest or rent, these facts go to show that there is only an agreement for repurchase and not a mortgage.

**Mortgages — fact that consideration approximates fair value of property at time of conveyance tends to show sale rather than mortgage.**

7. When the consideration approximates the fair value of the property at the time of the conveyance, it is a circumstance tending to show that a sale rather than a mortgage was intended.

**Mortgages — reservation of right to repurchase, or agreement to reconvey, is not alone sufficient to make conveyance, absolute on face, mortgage.**

8. The reservation of a right to repurchase, or an agreement to reconvey, is not alone sufficient to stamp a conveyance, absolute upon its face, as a mortgage.

**Mortgages — reservation in contract for sale of realty giving seller right to repurchase land at a certain price and within a specified time, held good.**

9. Persons possessing capacity to contract may enter into an engagement for the purchase and sale of real property, with a reservation to the seller of a right to repurchase the land at a certain price and within a specified time.

**Mortgages — deed held to constitute absolute conveyance, and not mortgage.**

10. Where it appears that: (a) there is no continuing obligation on the part of the grantor to pay a debt, either pre-existing or created at the time of the transfer; (b) the consideration expressed in the deed approximates the full value of the property described therein; (c) the grantor surrenders possession of the property to the grantee; (d) with full knowledge of all the circumstances and ample opportunity to assert whatever rights he has, the grantor permits the defendant, for over six years, to deal with the property as if an absolute conveyance has been made; (e) the written evidences of the indebtedness assumed or discharged by defendant in consideration of the transfer, are all cancelled, released, and, for the most part, actually delivered to the grantor; it is held, that the transfer was an absolute conveyance.

**Mortgages — whether conveyance is mortgage or deed of trust held to depend upon terms thereof.**

11. Whether the conveyance is a mortgage or a deed of trust depends upon its terms, and not whether the grantee is a creditor who is to be paid out of the proceeds that may arise from the execution of the trust declared.

**Mortgages — "deed of trust" is, in legal effect, a mortgage; no obligations existing or created at time of execution of deed, conveyance and contract executed simultaneously therewith held not to constitute trust deed.**

12. A deed of trust is, in legal effect, a mortgage. It, like a mortgage, is intended to secure an indebtedness or an obligation. There having been no obligation, existing or created at the time of the execution of the deed, it

is held, for reasons stated in the opinion, that the conveyance and the contract executed simultaneously therewith do not constitute a trust deed.

Opinion filed December 31, 1924.   Rehearing denied August 8, 1925.

Mortgages, 27 Cyc. p. 962 n. 10; p. 967 n. 34, 35, 36 New; p. 999 n. 10; p. 1004 n. 40; p. 1007 n. 54; p. 1008 n. 61; p. 1009 n. 63; p. 1010 n. 67; p. 1011 n. 72; p. 1012 n. 77; p. 1014 n. 88; p. 1015 n. 94; p. 1017 n. 14; p. 1018 n. 18; p. 1021 n. 30; p. 1024 n. 41; p. 1025 n. 47.

Appeal by both parties from a judgment of the District Court of Ramsey County, *Kneeshaw, J.*

Reversed and dismissed.

*Cuthbert & Adamson,* for plaintiff-appellant.   (Separate appeal.)

A trustee who has accepted a trust will be estopped to set up title adversely to his cestui que trust. 11 Am. & Eng. Enc. Law, p. 444, note 4.

Where a trust results by force of a written instrument it cannot be controlled, rebutted or defeated by parol evidence of any kind.   McDermott v. Voorhees (Colo.) 25 Am. St. Rep. 289; 1 Perry, Trusts, § 150; Langham v. Sanford, 17 Ves. Jr. 435; White v. Williams, 3 Ves. & B. 72.

*Amasa E. Wheeler,* and *Middaugh & Smythe,* for defendant-appellant.

A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time.   Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence.   Smith v. Clay, 3 Bro. Ch. 638.

Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles.   6 R. C. L. § 225, p. 835.

The owner of the land may be willing to sell at a price agreed upon, and the purchaser may also be willing to give his vendor the right to repurchase upon specified terms; and if such appears to be the intention of the parties it is not the duty of the court to attribute to them a different intention.   Such a contract is not opposed to public policy.

nor is it in any sense illegal, and courts will depart from the line of their duties should they, in disregard of the real intention of the parties, declare it to be a mortgage. McGuin v. Lee, 10 N. D. 160.

It is the law that if a deed, and either written or oral contract between the parties thereto, be entered into at the same time, by which the grantee agrees to reconvey the premises to the grantor upon the payment by the grantor of either a pre-existing or then created debt, the transaction is conclusively presumed to be a mortgage, and no stipulation of the parties can make it otherwise. But to give rise to this presumption, there must exist a debt. Turner v. Kerr, 44 Mo. 429.

Where a vendee in a land contract surrenders his contract to his vendor, and the same is accepted, the release of the vendor from the obligations of the contract is a sufficient consideration to support the surrender. Kvello v. Taylor, 5 N. D. 76.

A written contract for the sale of land may be abandoned or annulled by the parties thereto by parol agreement. Haugen v. Skjervheim, 13 N. D. 616; Mahon v. Leech, 11 N. D. 181, 90 N. W. 807; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856.

JOHNSON, J. Judgment was entered in favor of the plaintiff in the district court of Ramsey county upon findings of fact, conclusions of law, and an order for judgment. From this judgment both parties have appealed. This case was here before on appeal from an order which we held not appealable. See Dean v. Smith, 50 N. D. 638, 197 N. W. 589.

The court found, as a basis for its judgment, that plaintiff's assignor, on and prior to April 17, 1915, was the owner of 526 acres of farm lands in Ramsey county; that on that date plaintiff's assignor conveyed the land by a warranty deed to the defendant, and that, at the same time and as a part of the same transaction, the parties entered into an agreement in writing, identified as Exhibit A, in the following form:

"This Agreement made and entered into this 17th day of April, 1915; by and between S. J. Dean of Crary, N. D. party of the first part, and J. H. Smith of the same place, party of the second part.

"Witnesseth that the said party of the first part in consideration

of Thirteen Thousand Nine Hundred ($13,900.00) Dollars, has this day conveyed to said second party by Warranty Deed about 526 acres of land in the Townships of Odessa and South Minnewaukan, Ramsey county, North Dakota, said land being more fully described in said Deed, Whereas there is at this date Mortgages, accrued interest, and taxes against said land amounting to $13,900.00, which the second party assumes, and agrees to pay at this time the accrued interest and taxes, thus preventing foreclosures of mortgages and excessive rate of interest on account of taxes and interest past due.

"The second party hereto agrees to allow the first party to remain on said lands, providing he pays on or before the first day of November, 1915, 1916 and 1917 interest on said sum of $13,900.00 at eight per cent per annum, also all taxes assessed against said lands which shall be paid when due, and pay the premium for keeping the buildings insured for a reasonable amount, further that he will during the life of this agreement watch over and protect all buildings and fences on said premises, and will farm and cultivate said lands in a careful and husbandlike manner.

"Further the second party reserves the right to sell said lands for the sum of $16,300.00, paying any difference over and above said $13,900 and interest at 8 per cent and any further sums accumulating against the premises over to the first party hereto. Further should the party of the first part enter into an agreement to sell about 300 acres of said lands which shall not include the land on which the buildings are located, or that which naturally should go with them, he has the privilege of doing so, providing the amount for which said land is sold for, is not for a price that would reduce the value of the remaining lands, and that the proceeds of said sale of lands shall be applied on said $13,900.00.

"Provided further that in case of default by said first party in any or either of the covenants of this agreement to be kept or performed by him, he hereby agrees on demand of said second party to quietly and peaceably surrender possession of the same premises and every part thereof thereby cancelling this agreement after which it shall be null and void and not binding on the second party hereto."

The court finds that the defendant sold 120 acres of this tract to one Wagner in April, 1917, and in September, 1919, the balance to one

Rutten; that the total consideration was $24,500, some of which was paid in cash and some secured by mortgages. The court also finds the rent and profits taken by defendant from the use of the land and that plaintiff's husband removed from the land in the fall of 1915, and did not pay taxes, or interest on the debt of $13,900 and that the defendant thereafter farmed the land by tenant until it was sold. The court finds that the agreement between the parties was "in the nature of a trust" and required the defendant to account to the plaintiff in the manner stated in the findings. The court finds that there was due the defendant, at the time of the trial, the sum of $3,707.73 and ordered the plaintiff to pay this sum, whereupon the defendant was directed to transfer to plaintiff, by assignment, in due form, the notes and mortgages received as a part of the consideration for the sale of the land to Wagner and Rutten. The court finds that the trustee dealt with the property in good faith; and that the only consideration for the execution of the warranty deed was Exhibit A. There is no express finding of a continuing and existing indebtedness at and after the date of the execution of the warranty deed and Exhibit A. The court also found that there was no agreement made whereby the parties annulled or cancelled Exhibit A.

The trial court made findings in support of an interlocutory decree, or order, from which an appeal was taken. See Dean v. Smith, 50 N. D. 638, 197 N. W. 589. The court then expressly found that the plaintiff and her husband had failed and neglected to comply with the provisions of Exhibit A in this, that they had not paid interest on $13,900, on or before November 1, 1915, 1916 and 1917, nor had they paid taxes or premiums on fire insurance policies as therein provided; that thereafter the plaintiff and her husband vacated the premises and the defendant took possession thereof and retained possession until the property was sold to Wagner and Rutten. The court also found at that time that the defendant treated the contract as cancelled and thereafter asserted title to the land under the deed. Defendant asserts that it was error to omit this finding of fact. The evidence, without substantial dispute, supports the contention of defendant in this regard.

The defendant Smith appeals from the judgment, alleging error in the conclusion of the trial court that Exhibit A constituted a trust agreement. The theory of the defendant is that the transaction was an

absolute conveyance, that the rights of plaintiff's assignor under Exhibit A were by mutual agreement fully and completely extinguished; and that possession of the land was unconditionally surrendered to defendant in April, 1916, and that the plaintiff's assignor then and there wholly abandoned any right, title to, or claim of interest in, the property described in the warranty deed and in Exhibit A.

The evidence, without dispute, shows that, at the time of the execution of Exhibit A and of the deed conveying the property to defendant, on April 17, 1915, there was an outstanding mortgage due and on which interest was delinquent, held by the George B. Clifford Co. and another mortgage held by the defendant; that the aggregate of the liens and encumbrances upon the property at that time was $13,900; that the land was worth no more than the incumbrances, according to the uncontradicted testimony of the defendant; that in April, 1916, the plaintiff's husband sold all his stock and personal property that was on the premises at auction and that his son, who, up to that time had been farming the land, left the place and possession thereof was delivered to Smith without condition, otherwise than as may appear in Exhibit A; that the plaintiff's assignor had failed to comply with the terms of Exhibit A with respect to the payment of rent for the use of the property during 1915, and otherwise; that some time in the fall of 1915, the defendant and plaintiff's husband entered into a contract of purchase and sale of 320 acres of land owned by defendant near Crary, wholly on time, on the crop payment plan, at $35.00 per acre; that possession of this land was thereupon taken by the plaintiff and her husband; that the defendant released plaintiff's husband from his obligation to pay rental for the use of the land in suit in 1915; that thereafter, and in March, 1917, the defendant sold 120 acres of the tract in suit to one Wagner at $35 per acre and on October 1, 1919, the balance to one Rutten at $50 per acre; that when this sale was made some cash was paid and notes and mortgages executed to defendant; that the plaintiff and her husband, in 1921, or 1922, resold the 320 acres at a profit of about $8,000; that the defendant dealt with the land, described in Exhibit A, and the interest therein as vendor, at all times, as his own; that, although the parties all lived in the village of Crary, had been intimately acquainted for over 25 years, and saw each other almost daily, no mention had ever been made by the plaintiff or her

assignor of any claim of interest in the property described in Exhibit A, until this suit was commenced on May 17, 1922; that immediately after the surrender of the possession in 1916, the defendant rented the premises to one Thompson, with the knowledge of, but without protest from, the Deans. The evidence shows, without dispute, that when the transaction was completed, resulting in the execution of the deed and of Exhibit A, the evidences of the indebtedness from Dean to defendant were cancelled, released and delivered to plaintiff's assignor; the defendant testifies, without contradiction, that he paid the Clifford mortgage, procured a release of the same of record, and he thinks that he delivered the cancelled notes and the mortgage to the mortgagor. The Deans paid nothing for the use of the property in 1915, paid no taxes, nor did they pay premium on the fire insurance policy. They never offered, nor were they asked by defendant, to pay interest on any indebtedness. The Deans never asked Smith for anything under the contract; plaintiff admits she knew of the sales to Wagner and Rutten, and also the terms of sale, but never mentioned the matter to Smith. In 1920, the defendant made a loan to the Deans upon the security of property in Crary, but no request for an accounting was then made, although plaintiff's husband was apparently in need of funds. All the foregoing testimony is admittedly true, or wholly undisputed.

Smith testified that some time between November 1, 1915 and January 8, 1916, the latter date being the date on which the contract for the purchase and sale of 320 acres of land near Crary was entered into, he went to Dean and brought to his attention defaults under the agreement (Ex. A); that it was then agreed between the defendant and Dean that defendant would sell Dean 320 acres in Section 5 near Crary, on the crop payment plan, at $35 per acre, and that Dean would surrender possession of the premises described in Exhibit A in the spring of 1916, and that "all dealings with reference thereto were to be cancelled;" also, that the defendant would release Dean from his obligation to pay for the use of the property for the year 1915. On this point we find the only substantial dispute in the record. Dean denied that there was any connection between the purchase by him of the tract near Crary and the cancellation of his "obligations on the Smith farm" (described in Ex. A), as claimed by defendant. Dean, however, admits, in substance, his defaults under the agreement (Ex.

A), surrender of possession in 1916, and that he made no claims at any time against the defendant until suit was commenced.

The plaintiff alleges that the warranty deed, executed on April 17, 1915, and the contract entered into at the same time, amounted to "an equitable mortgage," and that the instruments were executed because of encumbrances in the amount of $13,900 then existing against the land. The plaintiff further alleges that upon an accounting it appears that the debt of $13,900 has been fully extinguished by moneys coming into the hands of the defendant from the sale of the property and the rental value thereof. The plaintiff prays for an accounting and that the mortgage debt of $13,900 be adjudged in all things paid and that she have a judgment for the difference. Plaintiff's theory, therefore, seems to be that the transaction was not an absolute conveyance, but a transfer for security; the complaint may also be susceptible to the construction that a trust was created in favor of plaintiff's assignor and that an accounting of the trust estate is demanded. The trial court took the latter view, held that the situation created a trust of which the defendant should be required to account. In view of the pleadings and evidence, we think it advisable to consider the transaction of April 17, 1915, from both viewpoints, that is, on the theory that the deed was not intended to operate as an absolute conveyance, but as security, and that a trust relationship arose. We shall discuss the evidence from these standpoints in the order stated.

. No oral testimony was offered as to the purpose or intention of the parties when Exhibit A was executed. Their rights must be measured by the deed and Exhibit A; their intention must be gathered from these instruments and their subsequent conduct in regard to the property described therein.

The statutory authority for the construction of a deed as a mortgage is found in § 6727, Comp. Laws 1913, as follows:

"Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act is to be deemed a mortgage, except when in the case of personal property, it is accompanied by an actual change of possession in which case it is deemed a pledge."

The fact that a transfer was made subject to a defeasance may be proved by evidence aliunde, except as against subsequent purchasers

or encumbrancers for value and without notice.   Comp. Laws 1913, § 6729.

A warranty deed, absolute upon its face, is presumed to be an unconditional conveyance.  The burden to overthrow this presumption is upon him who asserts the contrary, and the rule is that the proof, to be sufficient, must be "clear, satisfactory, and specific, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt." Jasper v. Hazen, 4 N. D. 1, 6, 23 L.R.A. 58, 58 N. W. 454. Courts have not hesitated to hold that a deed, absolute upon its face, is a mortgage, when such was the intention of the parties, and when that intention was established by clear, satisfactory and convincing evidence; and in case of doubt, to resolve it in favor of a mortgage. A mortgage, however, is a security for the performance of an obligation, usually the payment of money.  It is an incident of an existing debt.   According to the uniform rule, it is essential that there be an agreement, express or implied, on the part of the mortgagor or other person in whose behalf the mortgage is executed, to pay a debt, or discharge an obligation in some other form, owing to the mortgagee. "One of the strongest and surest tests as to whether a conveyance, absolute in form, shall be deemed a security conveyance, is the continuance of the indebtedness or its extinguishment.   If the debt continues as such, it is a mortgage.   The mortgage is an incident of the debt and without a debt, obligation, or liability, there is nothing to secure, and consequently there can be no mortgage." Miller v. Smith, 20 N. D. 96, 101, 126 N. W. 499.   See People ex rel. Ford v. Irwin, 14 Cal. 428, 435; Ahern v. McCarthy, 107 Cal. 382, 40 Pac. 482; Boal v. Gassen, 178 Cal. 132, 172 Pac. 588; Beckman v. Waters, 161 Cal. 581, 119 Pac. 922.

Was there a continuing indebtedness?   At or about the time of the execution of the deed and of Exhibit A, the grantee in the deed held notes and mortgages of the grantor Dean, which he cancelled and surrendered to Dean as fully paid; about that time, also, Smith paid an indebtedness of approximately $7,000 owing by the grantor to the George B. Clifford Co. and he says he thinks he surrendered the evidences of such indebtedness to Dean.   In any event, the mortgages securing the indebtedness were fully released of record.   No new notes were executed by Dean to the defendant; no promise to pay a debt was

made; no arrangements were made or suggested as to when any existing indebtedness should be paid by Dean; no interest was ever paid by Dean or demanded by Smith. The existing indebtedness of Dean to the grantee and others was fully discharged and neither Smith nor the George B. Clifford Co. could at any time thereafter have maintained an action against Dean, the grantor, upon the indebtedness assumed by defendant and which constituted the real consideration for the conveyance. The absence of any written evidence of a debt is a circumstance, though not conclusive, indicating a sale rather than a conveyance for security. Grubb v. Brendel, 52 Ind. App. 531, 100 N. E. 872. "If in the subsequent transactions of the parties there is no recognition in any way of the relation of debtor and creditor, and the vendee for a considerable period holds possession without paying interest or rent, these facts go to show that there is only an agreement for repurchase and not a mortgage." 1 Jones, Mortg. 7th ed. § 267, p. 351. We are unable to find any evidence in this record indicating, or even suggesting, the existence of any debt whatsoever, owing from Dean to the defendant. In other words, there remained nothing to be secured by a mortgage when the transaction, resulting in the execution of the deed, was completed.

It is not disputed that the consideration of $13,900.00 approximated the fair value of the property at the time of the conveyance. This fact is a circumstance tending to show that a sale, rather than a mortgage, was intended; Cowell v. Craig (C. C.) 79 Fed. 685; Jeffreys v. Charlton, 72 N. J. Eq. 340, 65 Atl. 711; Schmidt v. Barclay, 161 Mich. 1, 125 N. W. 729, 20 Ann. Cas. 1194. Had the consideration been grossly inadequate, the disproportion between the price and the value would tend to support the theory of a transfer for security. Wells v. Geyer, 12 N. D. 316, 322, 96 N. W. 289. When the price paid is fair, in the absence of circumstances that would justify a contrary view, the transaction will ordinarily be deemed an absolute conveyance. Webster v. McDowell, 102 Minn. 445, 113 N. W. 1021. In the case at bar, the significance of the fact that the price was adequate becomes particularly impressive in view of other circumstances, like the return to the grantor of the evidences of indebtedness, the surrender of possession to the grantee, and failure of the grantors to assert any claim of right or interest in the premises for over six years thereafter, although they

saw the grantee almost daily most of that time and knew that he. was endeavoring to, and did in fact, sell the land to other parties. Carr v. Rising, 62 Ill. 14; Barton v. Lynch, 69 Hun, 1, 23 N. Y. Supp. 217; Rathbone v. Maltz, 155 Mich. 306, 118 N. W. 991. Where the grantee takes possession, leases the same to a third party, and, with the knowledge of the grantor, but without protest from him, in all respects deals with the property as his own, for years thereafter, the presumption that the deed was for security, raised by other circumstances, is rebutted. See Fletcher v. Northcross, 3 Cal. Unrep. 799, 32 Pac. 328; Garwood v. Wheaton, 128 Cal. 399, 60 Pac. 961; McCaughey v. Schuette, 117 Cal. 223, 59 Am. St. Rep. 176, 46 Pac. 666, 48 Pac. 1088.

It appears that the value of land has increased since January, 1916. The land then sold the Deans for $35 per acre, was, by them, sold for $60 an acre in 1921 or 1922. Of course, it is not material, upon the question as to whether the transfer was absolute or for security only, that the value of the land at the time of the trial was greater than in April, 1915 (Temple Nat. Bank v. Warner, 92 Tex. 226, 47 S. W. 515) but the defendant contends, in the language of this court in Miller v. Smith, supra, "that the great rise in land values . . . was the incentive for bringing this action, and that it would not have been thought of had there been no such increase in values." Whatever the fact in this connection may be, it is clear that repurchasing of any portion of the land was entirely optional with Dean. There existed no obligation on his part to pay a debt, or repurchase, or resell any part of the. premises. Dean assumed no obligation, express or implied, which Smith could enforce, directly or indirectly, with respect to the repayment of the consideration or the repurchase of the property. See Cowell v. Craig, supra, p. 689 [79 Fed.].

Assume that land values had declined and that Smith had. commenced foreclosure proceedings, on the theory that the conveyance was for security, and that after sale of the property he had sought a deficiency judgment against Dean. Surely, there can be no question that Dean could have successfully defended on the ground of payment in full. Yet, unless the relation of debtor and creditor continues so that the grantee has the legal right to call on the grantor to pay any. deficiency that may arise on a foreclosure, the agreement to reconvey con-

stitutes a conditional sale. McGuin v. Lee, 10 N. D. 160, 86 N. W. 714; Gassert v. Bogk, 7 Mont. 585, 1 L.R.A. 240, 19 Pac. 281; Blakemore v. Brynside, 7 Ark. 505. Likewise, if the original debt was extinguished and the grantee gives the grantor a privilege of repurchasing, which may be taken advantage of at the pleasure of the•grantor, the transaction is a conditional sale and not a mortgage. Bell v. Shiver, 181 Ala. 303, 61 So. 881; Stahl v. Dehn, 72 Mich. 645, 40 N. W. 922.

What were the rights of Dean under Exhibit A and in the circumstances? Reference to Exhibit A clearly discloses that he had the right to sell a certain portion of the land for a specified consideration, but without definite limits as to time. The reservation of a right to repurchase, or an agreement to reconvey, alone is not sufficient to stamp an absolute conveyance as a mortgage; and if there be no debt or obligation to be paid or performed by the grantor, or if the precedent debt be extinguished, the transaction is merely a conditional sale. Henley v. Hotaling, 41 Cal. 22; Farmer v. Grose, 42 Cal. 169; Boal v. Gassen, 178 Cal. 132, 172 Pac. 588; Woods v. Jensen, 130 Cal. 200, 62 Pac. 473. The purchase price of any tract sold must be applied on the $13,900.00, that is, turned over to the defendant. Taking the view most favorable to the plaintiff, the right given Dean to sell is equivalent to the right reserved in conditional sales to repurchase for a specified price within a specified time. The right to sell may sometimes be an agency arrangement, and no more.

Smith "reserves the right to sell" for a certain price and agrees to pay the difference between $13,900 and $16,300 to Dean. It must be noted, however, that the grantee, by Exhibit A, agreed that Dean might remain in possession of the premises and farm the same upon certain terms for a period of three years; here the reservation of the right to sell is not, in principle or substance, different from a like reservation frequently found in leases of agricultural or urban real property in this state. If Exhibit A had been continued in force and Dean had farmed the land during the years 1915, 1916 and 1917, and if, during such periods, Dean had fully performed his part of the agreement and the defendant had sold the land for $16,300, there is no doubt that it would have been obligatory on Smith to account for the difference to Dean. Such was their contract. It appears, however, by testimony

that is undisputed, that the parties abandoned the agreement evidenced by Exhibit A; that Dean surrendered possession of the property in April, 1916, did not pay interest or rental, and otherwise defaulted in the performance of covenants by him to be performed under that instrument; that the defendant Smith took possession of the property, and thereafter, for more than six years, with full knowledge and acquiescence on the part of Dean and the plaintiff, dealt with the same as his own. It appears without dispute that the plaintiff knew that defendant sold the property and knew the terms on which it was sold; that, notwithstanding such knowledge, neither plaintiff nor her husband in any manner questioned the right of the defendant thus to deal with the property until May, 1922, when this action was commenced. Exhibit A expressly stipulates, in case of default in any of the covenants to be performed by Dean, that he will surrender possession of the property quietly and peaceably, *"thereby cancelling this agreement, after which it shall be null and void and not binding on the second party hereto."* The undisputed evidence shows that possession was voluntarily surrendered to Smith, and thereafter, for more than six years, plaintiff or her assignor claimed or asserted no right whatsoever under Exhibit A, or otherwise, to the premises, or to the proceeds of the sale of the premises described in that instrument. By surrendering possession in case of default, Dean expressly agreed that his rights under Exhibit A should be extinguished.

The stipulation in the second paragraph of Exhibit A, that Dean shall pay interest at 8 per cent on $13,900 during the years 1915, 1916 and 1917, at first blush, tends to raise the presumption of a loan. We think this circumstance insufficient to overcome the contrary presumption, arising from other parts of the contract and from the conduct of the parties. It is significant that Dean may remain in possession only three seasons, according to the contract; at the end of that period he must either vacate the premises or make new arrangements with the grantee. He was authorized to resell only 300 acres out of the tract of 526 acres, conveyed by him. We think that this stipulation for interest is merely another method of fixing the annual rental to be paid by Dean for the use of the property.

Treating the stipulation in Exhibit A, giving Dean the right to sell a part of the land, as a covenant to reconvey on the part of Smith, it

does not follow that such covenant must be given the effect of a defeasance. The right of persons, possessing capacity to contract, to enter into an engagement for the purchase and sale of real property, with a reservation to the seller of a right to repurchase the land at a certain price and at a specified time, has been frequently enforced by the highest courts in this country as not against public policy. Turner v. Kerr, 44 Mo. 429; Conway v. Alexander, 7 Cranch, 218, 3 L. ed. 321; Rodgers v. Burt, 157 Ala. 91, 47 So. 226; Henley v. Hotaling, supra; McGuin v. Lee, 10 N. D. 160, 86 N. W. 714.

The agreement does not fix a definite time within which Dean may sell "about 300 acres" of the tract conveyed. It does provide that he may remain in possession for three seasons. It would seem that he would have this privilege during such period, *unless, in the meantime he defaulted in the performance of any "covenant of this agreement,"* and surrendered the possession. In case of default, however, the agreement, *in toto,* becomes "null and void and not binding" on the defendant. Dean did default in several particulars, and surrendered the possession to Smith, according to the contract. The contract thereby was as effectually terminated in all particulars as if there had been a definite date named therein after which all options to sell or repurchase would end. The parties named a contingency, upon the happening of which all the rights of Dean thereunder should terminate. That contingency—defaults on the part of Dean—arose and both parties fully recognized its effect upon their contractual relations and the Deans acquiesced in the result for a period of more than six years. The situation is not distinguishable in this respect from that disclosed in Farmer v. Grose, 42 Cal. 169, and Page v. Vilhac, 42 Cal. 75.

Our conclusion upon this branch of the case is as follows: (a) there was no continuing obligation on the part of Dean to pay a debt, either pre-existing or created at the time of the transfer; (b) the consideration expressed in the deed approximated the full value of the property described therein; (c) the grantor surrendered possession to the grantee; (d) with full knowledge of all the circumstances and ample opportunity to assert whatever rights they had, the Deans permitted the defendant, for over six years, to deal with the property as if an absolute conveyance had been made; (e) the written evidences of the indebtedness assumed or discharged by defendant in consideration of

the transfer were all cancelled, released, and, for the most part, actually delivered to the grantor. There is no evidence in the record that supports the theory of a transfer for security.

Was the warranty deed, with the accompanying agreement, a trust deed? Whether the conveyance is a mortgage or a deed of trust depends upon its terms, and not whether the grantee is a creditor who is to be paid out of the proceeds that may arise from the execution of the trust declared. More v. Calkins, 95 Cal. 435, 29 Am. St. Rep. 128, 30 Pac. 583. Counsel for the plaintiff sets out in his brief a proposed memorandum decision, which, however, the trial court did not adopt. It discloses the theory of the plaintiff in this case. It is there said: "In construing this instrument the court can arrive at no other conclusion than that it constitutes Smith the *trustee* and Dean the *trustor and beneficiary* in the event the land sold for anything in excess of the mortgage debt and accrued interest." Again, counsel says: "As the court construes this contract the proceeds of the sale were to be first applied to extinguish the mortgage debt, the excess to be at all times the property of Dean the mortgagor." It will be noticed that the theory is that a *debt existed that was not paid* and that the existence of this indebtedness is in reality made the basis of the claim that a trust was created. In effect, counsel's theory is that the transaction resulted in a *trust deed,* a form of security little known in this jurisdiction, with this peculiar and unusual departure from the form and theory of that mode of securing a debt, where still in use, that the *creditor himself* is the trustee. This does not in any manner aid plaintiff. "A deed of trust is in legal effect a mortgage." 1 Jones, Mortg. 7th ed. §§ 62, 1769. A deed of trust is intended to secure an *indebtedness* or an *obligation;* so is a mortgage. Either is an incident to an indebtedness, existing or created at the time of the execution of the instrument.

We are satisfied, for reasons heretofore stated, that the relation of debtor and creditor was fully determined on April 17, 1915, and that there is no foundation in the evidence for a holding that the parties intended to create the relation arising from the execution of a trust deed or a mortgage. There was no continuing debt and the grantor expressly stipulated that in certain contingencies all his rights under the agreement, Exhibit A, should be terminated. These contingencies

arose, possession was surrendered accordingly, and by its terms the contract became "null and void." That a written agreement for the sale of land may be annulled by parol, is settled in the state. Haugen v. Skjervheim, 13 N. D. 616, 102 N. W. 311 and cases cited. No writing was necessary in order to cancel Ex. A.

The judgment of the trial court is reversed and action dismissed.

CHRISTIANSON, Ch. J., and NUESSLE, BRONSON, and BIRDZELL, JJ., concur.

## After reargument.

After the opinion was filed in this case a petition for rehearing was presented by the appellant Dean and a reargument was ordered. We have carefully considered the arguments made on the controlling questions of law, and, after a re-examination of all the issues, are satisfied that the opinion as filed is correct.

CHRISTIANSON, Ch. J., and JOHNSON, BURKE, BIRDZELL, and NUESSLE, JJ., concur.