C. L. MILLER v. GUSSIE R. SMITH, Sarah Smith, Richmond Smith, All Heirs of R. R. Smith, Deceased, and All Other Persons Unknown, Claiming Any Estate or Interest in or Lien or Encumbrance upon the Property Described in the Complaint, and Their Unknown Heirs.

(126 N. W. 499.)

Deed as Mortgage — Evidence.

1. A deed of real estate, absolute in terms, will not be declared a mortgage, unless the evidence is clear, specific, satisfactory, and convincing that such was the intention of the parties when the conveyance was executed.

Deed as Mortgage — Test — Intent of Parties.

2. One of the most decisive tests to determine what the intention of the parties was is whether there exists a debt from the grantor to the grantee, as there can be no mortgage without a debt or liability to be secured.

Deed as Mortgage — Parol Evidence.

3. The form of the conveyance is not controlling, and parol evidence is admissible to show what the real agreement was.

Deed as Mortgage — Evidence — Declaration of Parties.

4. The declarations of the parties at the time and subsequently are also admissible to determine what the real intention was.

Deed as Mortgage — Agreement to Reconvey — Evidence.

5. A contract to reconvey on fixed terms does not necessarily show that the transaction was for security purposes, although the sum to be paid on a reconveyance is a sum equal in amount to the sum secured by a former mortgage.

Mortgage — Change of Conveyance — Evidence — Transaction Closely Scrutinized.

6. A security contract may be changed to an absolute conveyance, subject to an option to repurchase under fixed terms. On such issues the intention of the parties is the test, but the fairness of the transaction will be scrutinized to see that the act was not influenced by financial circumstances of the debtor or the oppression of the creditor.

Note.—Does a deed absolute on its face, but intended as a mortgage, convey the legal title, see note in 11 L.R.A. (N.S.) 209.

As to effect generally of deed absolute with agreement to reconvey, see note in 17 Am. Dec. 300.

**Mortgages — Equitable Mortgage — Contract to Reconvey before a Certain Day.**

7. Evidence considered, and *held* not to show that a deed and accompanying contract are a mortgage, but an absolute deed, with the privilege of a reconveyance on payment of a definite sum on or before a day certain.

Opinion filed May 3, 1910.

Appeal from District Court, Stutsman county; *Burke,* J.

Action by C. L. Miller against Gussie R. Smith and others. Judgment for plaintiff, and defendants appeal.

Affirmed.

*Geo. W. Thorp, Rickel & Dennis,* for respondent.

*John Knauf,* for appellant.

MORGAN, Ch. J. Action to quiet title, involving the title and ownership of the E. ½ of section 29, township 138 N., R. 65 W. in Stutsman county. The plaintiff claims the title thereto in fee simple. Defendants contend that the conveyance under which plaintiff holds the land is a mortgage, and ask for an accounting, and to be allowed to redeem from such mortgage on payment of the amount found due. Plaintiff recovered judgment in the district court. Defendants appeal, and ask for a review of the entire case under § 7229, Rev. Codes 1905.

The leading facts are the following:

In August, 1899, the defendant Gussie R. Smith and her husband, R. R. Smith, since deceased, leased a hotel in Cedar Rapids, Iowa, owned by the plaintiff's wife. The plaintiff acted as his wife's agent in that matter, and in all matters connected with the hotel. This lease was for five years. The Smiths were not able to furnish the hotel without borrowing money, and, in place of mortgaging the hotel furniture, they concluded to make other arrangements, and thereafter the plaintiff agreed to become surety for them at one of the banks for the sum of $1,000 for ninety days, and the Smiths agreed to indemnify him by giving him a mortgage on this land. Subsequently it was found that it would take $1,250 to buy the required furniture, and plaintiff thereupon indemnified the bank for $250 additional. On August 16, 1899, a note and mortgage were executed and delivered to the

20 N. D.—7.

plaintiff to secure him on his liability to the bank. The note at the
bank was extended at the end of every 90 days until October 16, 1900.
About this time the plaintiff informed Mrs. Smith that the bank did
not wish to extend the note again, and in consequence thereof the follow-
ing arrangement was agreed upon between the Smiths and plaintiff :.
The Smiths were to give him a warranty deed of this land, absolute
in terms. Plaintiff was to retain the note and mortgage for $1,250..
Plaintiff was to give, and did give, the Smiths a contract as follows,.
to wit: "Whereas, said C. L. Miller, at the special instance and request
of the said Gussie R. and R. R. Smith, signed a note as surety for
them for the sum of $1,250.00, payable to the Merchants National
Bank of the city of Cedar Rapids, aforesaid, which said note is now
due and payable, and whereas, the said Gussie R. and R. R. Smith are
unable to pay the same, and whereas, the said Gussie R. and R. R..
Smith, on the 16th day of August, a. d. 1899, executed a certain land
mortgage to the said C. L. Miller to indemnify and hold him harmless
against the payment of said note on—(premises described), now it is
agreed by and between the parties that the said C. L. Miller is to
pay the said note and the said Gussie R. and R. R. Smith to make a
deed for the above-described premises to the said C. L. Miller upon
the following conditions, to wit: The said C. L. Miller to still retain
said note and mortgage, and if the said Gussie R. and R. R. Smith
shall pay to the said C. L. Miller, on or before October 16, 1901, all
moneys including costs, taxes, and other expenses, together with 7
per cent interest per annum on the same, then the said C. L. Miller
will sell  and reconvey the said premises back to the said Gussie R.
and R. R. Smith or their heirs or assigns, and deliver up and duly
cancel the said note and mortgage, or, if the same is not paid by the
said time, the said C. L. Miller will deliver up to them said note and
mortgage, if no other encumbrance is found against said land, and
in which case said Gussie R. and R. R. Smith are to have no other or
further claim at law or in equity upon said premises so conveyed to
him, but his title to be absolute and perfect in fee simple."

The deed was immediately placed on record by the plaintiff. Dur-
ing the year following the delivery of this deed nothing transpired to
change the relation of the parties to the land or to the contract, except
that the plaintiff paid the bank the sum of $1,250 after the execution of

the papers on the 16th day of October, 1900. The Smiths had paid the interest to the bank on the $1,250 note up to that date. When the year was about to expire, Mrs. Smith sent for the plaintiff to come to the hotel, and they talked over matters there, and she then gave him $3,200 worth of notes for collection, out of which, when collected, he was to pay the rent in arrears due his wife. At this same interview, plaintiff handed her the mortgage of August 16, 1899, and the $1,250 note, and a satisfaction or written discharge of the mortgage, which she says "he told me at the same time I should put it away, as I might need it again." In regard to this interview there is some conflict. Mrs. Smith says that she was to have the right to redeem at any time, and that the plaintiff so stated to her at this interview. Plaintiff positively denies that any such talk was had or promise made at any time after the surrender of the mortgage and other papers, about October 16, 1901.

After the turning over and acceptance of the note, mortgage, and satisfaction piece, nothing transpired between the parties concerning this matter until March 25, 1902, when Mrs. Smith wrote the plaintiff as follows: "Patterson, Mar. 25, 1902: My Dear Mr. Miller: Your letter was forwarded me from Reading. I am glad to know everything is all right in Cedar Rapids and as far as money is concerned we are square, but in kindness and consideration I am still your debtor." The letter to which this was a reply referred to all arrears of rent having been paid out of the notes placed in plaintiff's hands for collection. On September 11, 1902, Mrs. Smith wrote to the plaintiff as follows: "We are expecting in a few days to go to Dakota to attend to matters out there, and I would like to know if you are still willing to allow me to redeem the half section of land you have for what it cost you." In response to this letter, the plaintiff wrote her that he had given another party an option or agreement to sell this property. It is claimed by Mrs. Smith that she answered this letter of plaintiff's, and complained that he should have given another party an option on the land when he had agreed to let her redeem it. The plaintiff, however, testifies that he never received this letter. On June 20, 1903, Mrs. Smith wrote the plaintiff, and in the letter used this language: "Now I want to know if you will allow me to keep the control of twenty-nine until you dispose of it otherwise. I inclose

you a diagram. The black lines are the lands I am interested in. The crosses are your half of twenty-nine, and the ring is the farmer's. Now you can see how convenient your land is for the farmer to pasture his stock on, which he is now doing, and how inconvenient it is for me to have him there. Indeed, I can see how foolish it was not to redeem this land myself when I had the chance, and I wish you would set a price on it and give me an option on it until after harvest,—not that I have not land enough, and more than I will ever need, but it makes it very inconvenient to have a half-mile right in the middle of my farm belonging to someone else." The land was uncultivated land, with no one in actual possession thereof. From these papers and letters and the evidence we are to determine whether the defendant should, on equitable principles, be permitted to redeem at this time. This must depend upon what was the intention of the parties on October 16, 1900, when the deed and accompanying contract were executed and delivered. It is the intention of the parties at that time that must govern, and parol evidence is admissible on that issue, under § 6153, Rev. Codes 1905. Subsequent acts and declarations are admitted in evidence only as having bearing on what the original intention was. If the parties intended the deed to be security simply, it should be deemed a mortgage, whatever its language may be. The degree of proof required before a deed absolute in form will be declared a mortgage is well established. It requires that the evidence must be clear, convincing, and specific before the deed will be declared a mortgage. It must be such evidence that leaves in the mind of the chancellor no substantial doubt. Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; McGuin v. Lee, 10 N. D. 160, 86 N. W. 714; Wells v. Geyer, 12 N. D. 316, 96 N. W. 289; Forester v. Van Auken, 12 N. D. 175, 96 N. W. 301; Little v. Braun, 11 N. D. 410, 92 N. W. 800; Northwestern F. & M. Ins. Co. v. Lough, 13 N. D. 601, 102 N. W. 160; Devore v. Woodruff, 1 N. D. 143, 45 N. W. 701; Wallace v. Johnstone, 129 U. S. 58, 32 L. ed. 619, 9 Sup. Ct. Rep. 243; Conway v. Alexander, 7 Cranch, 218, 3 L. ed. 321; Rogers v. Beach, 115 Ind. 413, 17 N. E. 609; Smith v. Crosby, 47 Wis. 160, 2 N. W. 104; Elston v. Chamberlain, 41 Kan. 354, 21 Pac. 259.

In considering the evidence we find that Mrs. Smith is contradicted in all particulars by the plaintiff. In every conversation with

him in which she claims that he agreed to allow her to redeem, he positively denies such conversation, and positively denies making any promise to her that she might redeem. We also find that she is uncorroborated except in a single instance. This corroboration is so meager as hardly to deserve mention. A clerk at the Cedar Rapids hotel claims that he overheard a conversation between the plaintiff and Mrs. Smith in October, 1901, wherein plaintiff stated to her that she need not worry about redeeming the land, and could take all the time she wanted to redeem. This conversation was on the street in front of the hotel, and the witness was a few feet from the persons having the conversation, and was not connected therewith. He did not get a clear understanding of the subject of the conversation while it was going on, and simply learned that something was being said about redeeming. He thereafter asked Mrs. Smith about the conversation, and stated on the witness stand as follows: "I thought I was not absolutely sure what they were talking about, and I said, 'Were you talking about the hotel,' She said: 'No; about the land in North Dakota.' " Taking his testimony as a whole, it cannot have controlling weight in view of the other evidence, and especially in view of the fact that Mrs. Smith accepted, without any claim of a right to redeem, a surrender and cancelation of the note and mortgage a few days thereafter. These letters and documents are difficult to be understood on the theory that a right to redeem or to buy back existed after October 16, 1901. Up to that day the plaintiff was obligated to convey back on payment of a fixed price. It was not a right to redeem from the mortgage, but an option or privilege to demand a deed pursuant to the contract of October 16, 1900. There was ample consideration for this agreement, being the cancelation of the indebtedness and giving back the evidence thereof. One of the strongest and surest tests as to whether a conveyance absolute in form shall be deemed a security conveyance is the continuance of the indebtedness or its extinguishment. If the debt continues as such, it is a mortgage. The mortgage is an incident of the debt, and without a debt, obligation, or liability, there is nothing to secure, and consequently there can be no mortgage.

In Turner v. Kerr, 44 Mo. 429, the court said: "It is the law that if a deed, and either written or oral contract between the parties thereto, be entered into at the same time, by which the grantee agrees to re-

convey the premises to the grantor upon the payment by the grantor of either a pre-existing or then created debt, the transaction is conclusively presumed to be a mortgage, and no stipulation of the parties can make it otherwise. But to give rise to this presumption, there must exist a debt. There can be no mortgage without a debt. Whether a given transaction is a mortgage in the form of an absolute deed or a conditional sale is very often difficult to determine, because the elements of each are so nearly allied. The distinction between them lies in that the mortgage is security for a debt, while the conditional sale is a deed accompanied by an agreement to resell on specified terms." In Pomeroy on Equity Jurisprudence, 3d ed. vol. 3, § 1196, it is said: "If there is no indebtedness, the conveyance cannot be a mortgage. If there is a debt existing, and the conveyance was intended to secure its payment, equity will regard and treat the absolute deed as a mortgage. The presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land. To overcome this presumption and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail."

The right of the parties to make deeds as conditional sales is undoubted. In Rodgers v. Burt, 157 Ala. 91, 47 So. 226, the court said: "But there is no reason why a mortgagee should not, by contract subsequent to the execution of the mortgage, purchase from the mortgagor the equity of redemption or obtain a release of the statutory right of redemption, provided he do so fairly and for an adequate consideration." In Peagler v. Stabler, 91 Ala. 308, 9 So. 157, the court said: "Circumstances may be such as to render such a sale mutually beneficial, and entirely optional on the part of the mortgagor, uninfluenced by the relation of the parties." In the latter case it was also said: "To convert the instrument into a mortgage there must be a continuing, binding debt, in its fullest sense." In Henley v. Hotaling, 41 Cal. 22, the court said: "There can be no question that a party may make a purchase of lands, either in satisfaction of a precedent debt or for a consideration then paid, and may at the same time contract to reconvey the lands upon the payment of a certain sum, without any intention on the part of either party that the transaction should be in effect a mortgage. There is no absolute rule that the covenant to reconvey

shall be regarded, either in law or in equity, as a defeasance." See also McGuin v. Lee, supra; Knaus v. Dreher, 84 Ala. 319, 4 So. 287. Under these authorities we are satisfied that the transaction in question was not a security transaction.

Counsel for the defendant bases his argument upon the contention that the deed of October 16, 1900, was a mortgage. In this he is mistaken. It was an absolute deed with an accompanying option to repurchase within a year on payment of a fixed sum of money. This made it a conditional sale, which is distinguished from a mortgage by the circumstance of a fixed price as the basis for a reconveyance rather than an indebtedness. Up to October 16, 1901, a certain sum was to be paid to insure a reconveyance, but such sum was not payable as a debt, but was the price agreed upon for a reconveyance. The deed accompanying the contract contained no words to support the theory that the debt continued, or that the mortgage was to be redeemed or paid, before October 16, 1901. The subsequent letters written by Mrs. Smith show that she considered the plaintiff to be the absolute owner of the land until the letter of June 4, 1906, which was written after she had consulted an attorney. About this time Mrs. Smith went before a notary public and acknowledged the execution of the contract of October 16, 1901, and placed the same on record. The record of this contract was deemed a cloud upon his title, and the action was brought by him to quiet the title. Until that time there was no claim of a right to redeem, and when the word "redeem" was used in her letters, it referred to the contract in force from October 16, 1900, to October 16, 1901. As shown by the letters, she refers to the land as "your land," "the land you have," "until you otherwise dispose of it," "your half of twenty-nine," etc. In her letter of June 20, 1903, she acknowledges that she has no right in the land when she says: "How foolish I was not to redeem this land myself, when I had the chance." If the contract of October 16, 1900, was understood as conveying an indefinite right of redemption, why should she ask the plaintiff "if he would still allow her to redeem?" If she deemed herself the owner of the land, why should she ask permission "to keep the control of section 29 until you otherwise dispose of it?" If a mortgage was to continue after October 16, 1900, why was a change made in the form of the mortgage or security? Plain-

tiff already had a mortgage. If he was to get·nothing more by the deed, it was superfluous to have the deed executed and recorded. This is a very strong circumstance to show that the parties intended the conveyance as an absolute one with the right to repurchase at the price fixed before October 16, 1901. Martin v. Martin, 123 Ala. 191, 26 So. 525. There is not a single fact proven showing that the debt was to continue, or that the deed was not absolute, subject to the one condition of the right to repurchase. It would seriously impair titles to nullify the solemn acknowledgment of deeds on mere uncorroborated admissions of a grantee, sworn to by the grantor only, but positively denied by the grantee. In ordinary actions this class of testimony is of small probative force. It certainly should be insufficient alone, and we hold it insufficient in this case to justify setting aside this deed when corroborated, as in this case, by the positive testimony of the grantee and the admissions of the grantor. In view of the convincing admissions in her letters, considered in connection with the unequivocal document of October 16, 1900, the cancelation of the debt, the discharge of the mortgage duly recorded, the surrender of the note and satisfaction of the mortgage to the grantee, and the positive evidence of the plaintiff, we think the defendant has failed in the contention set forth in her answer. Not only has she failed to substantiate her counterclaim in her answer by clear, convincing, and specific testimony, but we think it clearly appears that the facts are just the opposite to her contention, and that the deed was intended as a deed, and not as a mortgage, is proven by substantial testimony. Even if the rule, governing in some courts, were to be adopted that in case of doubt whether a conveyance is a mortgage or a conditional sale the benefit of the doubt is given to the debtor or grantor, the result in this case would be the same, as the character of the transaction is not, in our judgment, involved in any doubt.

It is intimated by counsel that the plaintiff took advantage of the financial embarrassment of the defendant. We do not find that the record sustains this allegation. In fact, it is not shown that she was in any particular financial distress. It is true that the hotel venture incurred a loss, but the plaintiff was not accountable for this. The evidence shows that she had considerable means. In one of her letters she frankly admits this, in asking the plaintiff to fix a price on the land,

when she says: "Not that I have not land enough, and more than I will ever need," etc.

As to the value of the land in October, 1900, there is no direct evidence. The trial court found, as a fact, that the amount of the original indebtedness with interest and taxes paid by plaintiff since 1900, equaled the reasonable value of the land. We are convinced that the great rise in land values between the year 1901 and 1906 was the incentive for bringing this action, and that it would not have been thought of had there been no such increase in values.

The judgment is affirmed. All concur.

ELLSWORTH, J., being disqualified, did not participate; W. C. CRAWFORD, judge of the tenth judicial district, sitting in his place by request.