[File No. 6556.]

STATE OF NORTH DAKOTA, Appellant, v. DIVIDE COUNTY, A Public Corporation, Respondent.

(283 N. W. 184.)

710

Opinion filed December 31, 1938.

*Alvin C. Strutz,* Attorney General, and *C. E. Brace,* Assistant Attorney General, for appellant.

R. H. Points, State's Attorney, for respondent.

BURR, J.   On February 20, 1919, the state, through the Board of University and School Lands, loaned $2100.00 from the permanent school fund to James McLaughlin on his promissory note due December 1, 1930, McLaughlin agreeing to pay annual interest at the rate of 5%.   As security McLaughlin gave to the state a mortgage upon the northeast quarter of section 24 in township 161, range 98, in Divide county.

The state still owns the note and mortgage, the mortgage has not been foreclosed, and the sum of $2,998.42 was due thereon at the time of the commencement of the action.

The taxes levied on the land for each of the years 1931 to 1936 inclusive were unpaid, and at the annual tax sales—there being no pri-

vate bidders—the land was bid in by Divide county. The county is now the holder of a tax certificate issued for each sale and asserts liens thereby aggregating $242.00 and penalties and interest. The pleadings show these and other pertinent facts, without dispute.

The matter was submitted to the district court for a declaratory judgment "determining the validity and priority of the liens of the parties and their respective rights in the premises. . . ." The district court granted the application for a declaratory judgment, made findings of fact as hereinbefore set forth, and concluded therefrom that the plaintiff has a first mortgage lien upon the premises by reason of its mortgage; that the defendant has liens upon the premises by reason of the tax sale certificates issued for the delinquent taxes; that all of these liens are of equal rank; that the plaintiff was not required to pay the taxes upon which the defendant's liens are predicated and is not required to redeem from the tax sales certificates issued; that the plaintiff may foreclose its mortgage lien, but that the foreclosure will not affect the liens of the defendant; "and the defendant may not foreclose its liens so long as the plaintiff's mortgage lien subsists or so long as the plaintiff may hold title to the said mortgaged premises by reason of its purchase thereof upon foreclosure."

Judgment in conformity therewith was entered and from this judgment the plaintiff appeals, specifying as error that the court erred in holding all liens of equal rank, "and any tax deed issued upon defendant's liens would be issued subject to plaintiff's lien, and sale of the mortgaged premises by the plaintiff would be subject to the liens of the defendant;" in failing to hold that the first mortgage lien of the plaintiff was prior to and superior to the liens of the county for taxes, and that any tax deed issued upon the defendant's liens would be issued subject to plaintiff's lien; in holding that the sale of premises by the plaintiff would be subject to the lien of the defendant; in failing to hold that the mortgage lien of the plaintiff was prior to and superior to the liens of the defendant and "in not concluding as a matter of law and adjudging that, if plaintiff obtains title to the premises described in the judgment herein by purchase upon foreclosure of its mortgage described in the judgment herein, plaintiff would hold such title free and clear of any lien or liens claimed by

defendants as set forth in the judgment herein, providing only that if said mortgagor, his heirs or assigns, acquire title to said premises subsequent to such foreclosure, then and in such case the liens of defendant would reattach to said premises."

So far as the facts are concerned this case differs in some respects from the case of State v. Burleigh County, 55 N. D. 1, 212 N. W. 217, but it is urged that this case at bar is controlled in principle by the case cited.

Here, the money loaned to the mortgagor was part of the permanent school fund of the state of North Dakota, and the loan was made through the Board of University and School Lands; whereas in the Burleigh county case the money was secured from the Bank of North Dakota under the "comprehensive act governing the loaning of money upon farm mortgage security by the Bank of North Dakota and the issuance of bonds to procure funds to replace those employed by the bank in the enterprise." However, the source from which the money came has no bearing upon the issues here, so far as the mere lien is concerned.

Again, in the Burleigh county case the mortgage held by the state was foreclosed, the property bid in by the State Treasurer as trustee, and, no redemption having been made, a sheriff's deed was issued to the State Treasurer as such trustee; whereas in this case the mortgage has not been foreclosed.

In this action a declaratory judgment is sought from a court of record, and as it is clear such judgment would terminate the uncertainty or controversy giving rise to the proceeding, the lower court, as provided by §§ 7712a1 and 7712a6, entertained the application, and proceeded to set forth all of the rights and legal relations of the contending parties necessary to determine the controversy finally. Having exercised his discretion to grant the application, it became necessary to determine the matter fully. The appeal is taken by the one asking for the declaratory judgment, no question is raised as to extent of review, and we pass upon all of the issues raised.

Under the provisions of § 153 of the Constitution this school fund remains "a perpetual fund for the maintenance of the common schools of the state." This, however, merely shows the source of the money loaned.

Under the provisions of § 156 of the Constitution the Board of University and School Lands is empowered to direct the investment of these funds "subject to the provisions of this article and any law that may be passed by the legislative assembly . . ."; and under the provisions of § 162 of the Constitution, "The moneys of the permanent school fund and other educational funds shall be invested only in bonds of school corporations or of counties, or of townships, or of municipalities within the state, bonds issued for the construction of drains under authority of law within the state, bonds of the United States, bonds of the state of North Dakota, or on first mortgages on farm lands in this state, not exceeding in amount one-half of the actual value of any subdivision on which the same may be loaned, such value to be determined by the board of appraisal of school lands."

From early times the legislature enacted a comprehensive plan for such investments as were made in first mortgages on farm lands. Under the provisions of § 287 of the Compiled Laws and subsequent amendments (none of which affects this particular issue) specific limitations with reference to first mortgages were made.

The state earnestly urges that because this mortgage is given for school funds it has a character entirely distinctive from the ordinary first mortgage lien. There is nothing in the constitutional provisions cited or in the provisions of this § 287 of the Compiled Laws, as amended, which describes the character and nature of the mortgage or in any way indicates that it is of a nature different from the ordinary mortgage.

"Mortgage is a contract by which specific property is hypothecated for the performance of an act without the necessity of a change of possession." Comp. Laws 1913, § 6725.

It is a security for the performance of an obligation, usually the payment of money. "The mortgage is an incident of the debt." Miller v. Smith, 20 N. D. 96, 101, 126 N. W. 499; Dean v. Smith, 53 N. D. 123, 133, 204 N. W. 987. Contracts of mortgage are subject to all the provisions of chapter 86 of the Civil Code dealing with liens in general. Compiled Laws, § 6703.

"Notwithstanding an agreement to the contrary, a lien or a contract for a lien transfers no title to the property subject to the lien." Comp. Laws 1913, § 6709.

This mortgage involved is merely a pledge of specific property as security for a debt or the performance of a duty. Whatever may have been the effect of a real estate mortgage in the past upon the title, it is clear under our statute that the mortgage in itself conveys no title to the land. It merely pledges the land as security for the debt. It is true that under foreclosure proceedings, the title to the land may be transferred when the mortgage is foreclosed and the property sold to someone for the purpose of collecting the debt, but the mortgage itself makes no change in the title.

There is nothing in our statutes which gives to a mortgage to secure the payment of money derived from the permanent school fund any other status than a mortgage in general. When the Board of University and School Lands takes a mortgage on real estate to secure repayment of money loaned from the school fund, it takes a mortgage which in no essential principle differs from the ordinary mortgage, and as between a lien claimed by a subdivision of the state and such mortgage lien, the mortgage becomes a lien upon the real estate affected from and after the time the mortgage is given.

The priority of the liens is the all-important question. The state has a lien on the real estate by virtue of its mortgage, and has a lien upon the real property because of the taxes; but though taxes are levied and a lien created by the state acting in its sovereign capacity, and for governmental purposes, the legislature may determine the relation of a tax lien to other liens, and § 2186 of the Compiled Laws provides: "Taxes upon real property are hereby made a perpetual paramount lien thereupon against all persons and bodies corporate, *except the United States and the state,* . . ."

By the term "paramount" is meant superior, pre-eminent, the highest in rank or nature. The lien to which the other yields and is inferior is the paramount lien, and where one is "paramount" the other can not be of equal rank. A tax lien is not in itself a lien paramount to any other lien of the state. But this § 2186 does not make a tax lien inferior to other state liens. It merely says in effect, it is not "paramount." The paramountcy of the tax lien described in § 2186 is limited to the relationship between tax liens and private liens, but leaves the question of paramountcy between state liens open for determination. This section is not intended to classify state liens in re-

gard to their rank, precedence, or priority, nor does it establish a rule to determine priority. Though a tax lien is not in itself "paramount" to other state liens, this does not imply that all state liens are necessarily of equal rank, or that at times a tax lien may not be paramount to a state lien of mortgage. The legislature may determine the order of priority with reference to state liens.

Nowhere is it pointed out to us that the legislature has at any time by law special to that subject classified the liens of the state so as to make one class inferior to another. As, by the provisions of § 2186 of the Compiled Laws, the tax lien is not made paramount to any lien held by the state, the priority of such liens is governed by the general law, unless otherwise provided by statute. Section 6714 of the Compiled Laws provides: "Other things being equal, different liens upon the same property have priority according to the time of their creation . . . ." We see no reason why this rule is not applicable to these liens held by the state. No other statute is called to our attention. The mortgage lien attached when created and as the taxes were levied thereafter, the lien for the taxes attached subsequently. Both are liens of the state. The tax liens are not by virtue of themselves paramount to the mortgage lien of the state, and because of the rule of priority they can not have equality of enforcement.

When we examine the legislative provisions with reference to the investment of the school fund, we note in § 287 of the Compiled Laws, as amended and carried forward into § 287 of the Supplement and chapter 215 of the Session Laws of 1929, it is the legislative policy, upon taking a mortgage to secure the repayment of a loan from the permanent school fund, that all prior encumbrances shall be paid before the net proceeds are turned over to the applicant, and all releases of encumbrances must be recorded at his expense. This, of course, covered taxes that were then due. This lien for taxes in such case would be prior to the mortgage lien and therefore superior. Hence, they had to be paid to attain priority for the mortgage.

The creation of the lien of mortgage does not prevent the subsequent attaching of liens for taxes, but these liens are subject to the lien of the mortgage. In the case at bar we are not concerned with the statutes of these tax liens until foreclosure of the mortgage lien and in case the state acquires title to the land.

The case at bar differs from the case of State v. Towner County, ante, 629, 283 N. W. 63, decided this term, involving the sale of school land under contract which was afterwards cancelled. There we hold that the tax lien attached to the interest of the purchaser only, and when that interest was extinguished there was nothing upon which there could be a lien, the lien was extinguished, and the taxes should be cancelled of record against the land. This is not the situation here. Here, up to this time, the mortgage lien exists against the whole tract, and the tax liens exist against the whole tract.

Though the county sold the land at tax sale for the taxes of 1931, bid in the land for itself, and holds the tax certificate, it followed the same system for subsequent taxes, and thus, upon the face of the record, holds at least six tax certificates, one for each of the six successive years where the land was sold at tax sale. On the face of the record, therefore, the state has a lien upon the land, evidenced by its mortgage, and the county claims six liens by virtue of the six tax certificates. The state's interest is merely that of a mortgage lienholder and the county has the lien, evidenced by the tax certificate.

It was not necessary for the county to sell the land for the delinquent taxes after the year 1931, for, as pointed out in State v. Burleigh County, 55 N. D. 1, 212 N. W. 217, supra, "Where a county holds a tax certificate issued to it after purchase, under § 2191, Compiled Laws of 1913 (the statute dealing with the sale of land for delinquent taxes) the property may not be again sold for delinquent taxes, but as taxes become delinquent the lien of the county, evidenced by the certificate, is augmented by operation of law."

Until this land becomes the property of the state through the obtaining of a deed the land is still subject to taxation. Until such land becomes the property of the state, the county is not prohibited from obtaining a tax deed for the land; but such lien for taxes, or the obtaining of a tax deed upon the strength of such tax certificates in no way destroys the lien of the state's mortgage nor militates against the right of the state to foreclose its mortgage. The county has the right to assign its tax certificates, or take and assign a tax deed based upon the tax certificate issued on the 1931 taxes, augmented by the subsequent delinquent taxes, until the mortgage is foreclosed and the land acquired by the state; but the interest conveyed by such assignment or

deed remains subject to the lien of the mortgage. The lien for taxes is a lien of the state, and the state, through this lien, does not impair the lien which it already holds by reason of its mortgage.

In State v. Burleigh County, supra, we were dealing with a mortgage made by the Bank of North Dakota and assigned to the State Treasurer as trustee. The investment of the mortgage in that case was governed by § 2290c9 of the Supplement. This section has been amended by chapter 182 of the Session Laws of 1929, but not in any particular involved here. That section provides that after the foreclosure of the mortgage, and in case no redemption from the sale was made, "a sheriff's deed shall be issued to the 'state treasurer as trustee of the state of North Dakota,'" and "Any taxes then remaining unpaid thereon shall be cancelled and abated by the board of county commissioners of the county wherein such land is situated." We held, therefore, that the clear meaning of the statute with reference to a foreclosure of a mortgage on private land given under the state law governing state loans on real estate is that this quotation referred to taxes levied but not due and delinquent, and that so far as it contemplated delinquent taxes in cases of land sold for delinquent taxes and bid in by the state, the tax lien still existed. This was based on the inference and deduction from the statute itself. Unless prevented by the Constitution, the state may classify its own liens—extinguish them, subordinate one to another, or hold them in abeyance.

In the making of loans on private property under the statutory provision for real estate loans, where such loans are taken as security for the state bonds, the state has provided, either directly or impliedly, that tax certificates held by the county are not ipso facto cancelled when the state acquires title to the land. The legislature has seen fit to give these liens a qualified status, keep them in existence, subject, it is true, to the lien of the state mortgage where the taxes became due after the mortgage was taken, but nevertheless not cancelled. No such provision has been made by the legislature in the case of land belonging to the permanent school fund of the state.

Thus, State v. Burleigh County, 55 N. D. 1, 212 N. W. 217, supra, is distinguishable from the case at bar.

As to subsequent taxation the rule is well settled. After the state acquires title to the land, the land is no longer subject to taxation.

§ 176 of the Constitution expressly bars taxation of the property of the state, and, therefore, as shown in the case of State v. Towner County, ante, 629, 283 N. W. 63, decided at this term, no taxes can be levied upon the land.

There remains the determination of the status of taxes levied before the state acquired title and which were not delinquent at the time of the acquisition of title.

In the case of State v. Burleigh County, 55 N. D. 1, 27, 212 N. W. 217, it is shown that such taxes accruing after the foreclosure of the mortgage and the obtaining of a sheriff's deed are to be cancelled. It is true this is based upon the specific provision found in § 9, chapter 292 of the Session Laws of 1923, as amended by § 2 of chapter 100 of the Session Laws of 1925, being § 2290c9 of the Supplement, which provides:

"In case no redemption is made from such foreclosure sale in a manner provided for by law, a sheriff's deed shall be issued to the 'state treasurer as trustee of the state of North Dakota.' Any taxes then remaining unpaid thereon shall be cancelled and abated by the board of county commissioners of the county wherein such land is situated . . . ," and, further, that this is dealing with a mortgage taken by the Bank of North Dakota under the power conferred upon it to make real estate loans, under the "Real Estate Bond Series" of state bonds, whereas the mortgage issued here was one taken by the Board of University and School Lands, in loaning part of the state school fund. It is clear, however, on principle, that the same rule must apply in this case. Taxes levied and not due are not liens upon the real estate, and after the state acquires title to the land, no tax lien can attach so long as the state holds it. It is not subject to taxation, and the taxes that ordinarily thereafter would have become due can not exist. Therefore, such taxes must be cancelled and abated of record.

However, in the case at bar, there is, in the opinion of the writer, only such difference in the facts as furnish additional reason for different treatment of the liens. Here the mortgage was taken to secure an investment of the permanent school fund of the state. So far as the lien was concerned, and while it existed as a mere lien, there was no provision for a classification different from the lien of a mortgage

given to the Bank of North Dakota. However, when the mortgage is foreclosed and deed issued to the state, then the land itself becomes part of the permanent school fund of the state. Section 153 of the Constitution says, "All proceeds of the public lands . . . granted by the United States for the support of the common schools . . . and all other property otherwise acquired for common schools, shall be and remain a perpetual fund for the maintenance of the common schools of the state. It shall be deemed a trust fund, the principal of which shall forever remain inviolate and may be increased but never diminished. The state shall make good all losses thereof."

Section 159 of the Constitution provides: "All land, money or other property donated, granted or received from the United States or any other source for . . . educational or charitable institution or purpose, and the proceeds of all such lands . . . shall be and remain perpetual funds. . . . The principal of every such fund may be increased but shall never be diminished . . . . Every such fund shall be deemed a trust fund held by the state, and the state shall make good all losses thereof."

The moment, therefore, that title to this land vests in the state, the land itself becomes a part of the school fund. As such it can not be subject to taxation in any form. Erickson v. Cass County, 11 N. D. 494, 506, 92 N. W. 841. It seems clear, therefore, that in such case, and with reference to taxes becoming due after the mortgage lien attached, all liens obtained on the sale of the land for such delinquent taxes are extinguished as against such land. Otherwise there would be indirect taxation. See Chicago v. People, 80 Ill. 384; Eagle Point Irrig. Dist. v. Cowden, 137 Or. 121, 1 P. (2d) 605, 606. See also State v. Kilburn, 81 Conn. 9, 69 A. 1028, 129 Am. St. Rep. 205, where a statute made such declaration, but, as shown in the Oregon case, this merely was declaratory of the common law. Such land is held for governmental purposes. It is not a private enterprise in which the state engages. State Land Bd. v. Lee, 84 Or. 431, 439, 165 P. 372, 375. If a purchaser is required to pay these taxes upon purchase of land belonging to the school fund, he will necessarily pay less into the school fund and thus the school fund be diminished indirectly by the state itself diverting part of the real purchase price to tax purposes, contrary to the injunctions of §§ 153 and 159 of the Con-

stitution requiring the fund to be kept inviolate and never diminished.

The judgment of the lower court is modified in conformity with this holding, and as so modified judgment will be entered.

BURR, MORRIS and SATHRE, JJ., concur.

NUESSLE, J., concurs in the result.

CHRISTIANSON, Ch. J. (dissenting). I am unable to agree with the conclusion reached by my associates in the opinion prepared by Judge Burr.

In my opinion, § 6714, Comp. Laws 1913, has no application to a lien for taxes under § 2186, Comp. Laws 1913.