# BOARD OF COUNTY COM'RS. OF BIG HORN COUNTY v. BENCH CANAL DRAINAGE DIST. ET AL.

(No. 2174; December 31, 1940; 108 Pac. (2d) 590)

For the appellant, the cause was submitted on the brief of *E. J. Goppert* of Cody.

For the respondent, there was a brief and an oral argument by *C. A. Zaring* of Basin.

*E. J. Goppert* in reply.

There was a brief and oral argument by *L. A. Bowman* of Lovell, Amicus Curiae.

BLUME, Justice.

This is an action brought on June 17, 1939, by the Board of County Commissioners of Big Horn County against Bench Canal Drainage District, E. J. Goppert, Trustee, and East Emblem Drainage District, to foreclose a tax lien against the lands in controversy in favor of the county under the provisions of Chapter 84, Session Laws of 1935, which provides, in brief, for

the foreclosure of general tax liens in the manner of foreclosure of mortgages, and for sale of the property as under a mortgage foreclosure. Plaintiff claimed a lien for general taxes in the amount of $3951.92. The East Emblem Drainage District defaulted. The Bench Canal Drainage District claimed a lien by reason of special assessments in the district in the sum of $3277.85, and contended that this lien is of equal dignity with that for general taxes. The court entered a decree to the effect that the County has a paramount lien on the land in controversy in the sum of $3280.52, and that the defendant Bench Canal Drainage District has a lien on the land inferior to that of the plaintiff in the sum of $3277.85. Sale of the land to satisfy these liens in the order named was directed. Big Horn County also claimed a lien for $651.40 on account of weed control. The court decreed in its favor a lien for that sum, junior and inferior, however, to the lien of the drainage district. From the decree so entered, the defendants not defaulting have appealed. The point relating to the lien for weed control is not argued, and will not be mentioned any further.

The lien claimed by Big Horn County covers taxes for the years 1924 to 1938, both inclusive. It is stipulated by the parties herein, however, that no taxes were actually levied against the land in controversy for the years 1924, 1925, and 1926, and that the sum allowed for them by the court should be eliminated from the judgment; further, that the total liens of the county for the taxes levied against the land for the remaining years should be computed at the sum of $2087.41.

■ The appellants claim that the sum last mentioned should be further reduced by the sum of $680.18, by reason of the fact that the county is barred from claiming any lien for taxes due for the years 1927 and 1928,

in accordance with Section 115-2346, Rev. St. 1931, providing as follows:

"All taxes upon the assessment rolls and tax lists in any county or of any incorporated town or city in the state not collected and enforced for a period of ten years from the time that such taxes have been levied shall stand cancelled upon the books and shall thereafter be uncollectible."

Counsel for Big Horn County claims that this statute is in violation of Section 40, Article III, of the Constitution of this state, which provides as follows:

"No obligation or liability of any person, association or corporation held or owned by the state or any municipal corporation therein shall ever be exchanged, transferred, remitted, released or postponed or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by the payment thereof into the proper treasury."

Counsel for the county rely upon State v. Fischl, 94 Mont. 92, 20 P. (2d) 1057; Sanderson v. Bateman, 78 Mont. 235, 253 Pac. 1100; Olivier v. City of Houston, 93 Tex. 201, 54 S. W. 940, which involved a constitutional provision similar to ours. Neither of these cases is exactly in point. All of them involved statutes in effect reducing the amount of taxes or the interest and penalty thereon already existing at the time of the enactment of the statute in question, which is not true in the case at bar, since Section 115-2346, supra, was enacted as a general statute of limtiations in 1917. For cases contrary to the Montana cases see note 79 A. L. R. 999, 68 A. L. R. 431. While the cases relied on herein contain language sustaining the contention of counsel for the county, they cannot be held to be controlling here. In fact, the Texas case is contrary to the contention of counsel herein, for the court in that case held that a general statute of limitations cannot be held to be in contravention of a constitutional provision similar to that involved in the case at bar, saying:

"So, in this instance, if the city were required to sue thereafter within a prescribed time, the validity of the act would be beyond question."

One of the judges even dissented from the limited holding of the majority of the court, stating:

"The power of the legislature to levy and collect taxes necessarily carries with it the power to prescribe the mode and manner of collecting and the time within which the collection shall be made, and such power should not be frittered away by judicial construction."

A tax is generally not considered to be a debt in the ordinary meaning of that word. 61 C. J. 1051; 26 R. C. L. 25; Cooley, Taxation, (4th ed.) Sec. 22. In this state, no provision has been made, as has been made in a number of states, that a tax is a personal obligation of the party whose property is assessed for taxes. It cannot, accordingly, be said, at least in the strict sense, that there is an obligation or liability in this case on the part of the tax payer. The Constitution of this state does not make a tax a lien upon any property. It is made so under the statute. It is a general rule that taxes are not a lien unless made so by the constitution or statute. 61 C. J. 613. Furthermore, it is generally held that tax liens exist as long, and only as long, as the statute provides. 61 C. J. 942; Cooley, supra, Sec. 1239; McQuillan, Municipal Corporations (2nd ed.) Sec. 2261. It would seem, accordingly, that the statutes in this state, instead of providing as it does, that the lien shall be perpetual (Sec. 115-2303, Rev. St. 1931), might have provided that it should be a lien only for the period of 10 years. If so, it would follow as a corollary that the same provision can be made by way of a statute of limitations, as is done in our state by Sec. 115-2346, supra. In State v. Montoya, 32 N. Mex. 314, 255 Pac. 634; Walton v. City of Portales, 42 N. Mex. 433, 81 P. (2d) 58; Burton v. City and County of Denver, 99 Colo. 207, 61 P. (2d) 856, it was held

that the legislature may validly cancel a tax lien. Neither of these cases involved a statute of limitations such as the section of our statute, but they are in point on the question of the right of the legislature in releasing a tax lien. In the first of the foregoing cases from New Mexico, it appears that the tax is also a personal obligation under the laws of that state, and the court held that this obligation could not, under a constitutional provision like Sec. 40, Article III, supra, be released under the statute in question, which was not a general statute of limitations, but which released all tax obligations which had accrued prior to 1910. The court stated that it did not decide as to whether or not a statute of limitations, such as our statute, would be in contravention of the constitutional provision above mentioned. As already stated, the Texas court, in the case above cited, held that such statute would be valid. The holding was doubtless based on the theory that statutes of limitation are statutes of repose, and it has often been stated that they are based on sound public policy. 37 C. J. 687, 689-690. In view of the fact, however, that taxes are not made a personal obligation in this state, our holding need not go further than that the tax liens which are older than 10 years are validly extinguished under the statute here in question, and that the judgment herein, accordingly, must be reduced by the sum of $680.18, as contended by the drainage district.

■ The Drainage District further claims that its lien is of equal dignity with that of the lien of the general taxes, under the provisions of Section 122-886, Rev. St. 1931, which reads as follows:

"All assessments provided for in this article, together with all interest thereon, and all penalties for default in the payment of same, and all costs of collecting the same shall, from the date of the order of court confirming such assessments until paid, constitute a perpetual

lien in amount not in excess of the benefits severally assessed, upon all the land and other property against which such assessments shall be levied, as provided herein, to which only the lien of the state for general state, county, city, town, or school taxes, shall be paramount, and no sale of such property to enforce any general state, county, municipal, or school tax, or other lien shall extinguish the lien of such assessments."

The drainage district claims that the clause of Section 122-886, supra, stating that general taxes shall be paramount to drainage assessments is modified by the clause following it, and that the effect of the whole section is that the general taxes and the drainage lien are placed upon an equal footing.

We should mention the fact that the drainage assessments involved herein were made prior to the enactment of section 122-886, supra, which was in 1923. At the time of the issuance of the bonds herein, the law provided, as the law does now, that taxes upon real property are "made a perpetual lien thereon against all persons or corporations, except the United States and this state." Section 115-2303, Rev. St. 1931. The law relating to drainage districts in force at that time merely provided that assessments "shall be a lien upon the lands assessed until paid." Sec. 1059, Comp. St. 1920. It has been held that such a provision gives no priority over other liens. McQuillin, Municipal Corp., (2nd ed.) Sec. 2262; note 30 L. R. A. N. S. 763, 764. And it would seem to be clear under the rule hereinafter mentioned that in the face of such a provision the lien for general taxes must be considered superior. The drainage district, however, claims the benefit of the provision of the law of 1923. While we have doubts on that subject, we may concede that to be true for the purposes of this opinion, and determine whether or not the contention made can be upheld under that theory.

It appears to be the rule, generally recognized, that in the absence of constitutional provisions, the legisla-

ture has plenary power in fixing the priority of tax liens, including the lien for special assessments. 61 C. J. 925; 25 R. C. L. 188. In Board v. State, 125 Okl. 287, 257 Pac. 778, 53 A. L. R. 1128, the court appears to decide that under a constitutional provision stating that "the power of taxation shall never be surrendered, suspended or contracted away," the legislature is powerless to subordinate a lien for general taxes to any other lien. We have a similar constitutional provision (Sec. 14, Article 15), but it is not necessary to determine the effect thereof. However, it is a general rule, supported, it seems, by the great weight of authority, that a lien for general taxes is superior to the lien of a special assessment, such as, or similar to that involved in the case at bar, unless the statute specifically provides the contrary. 26 R. C. L. 404; 19 C. J. 752; 44 C. J. 806; McQuillin, Municipal Corp. (2nd ed.) Sec. 2563; note 65 A. L. R. 1379; Ballard v. Way, 34 Wash. 116, 74 Pac. 1067, 101 A. S. R. 993; State ex rel. v. Board, 89 Mont. 37, 296 Pac. 1; Robinson v. Hansen, 75 Utah 30, 282 Pac. 782; LaMesa etc. Irr. Dist. v. Hornback, 216 Cal. 730, 17 P. (2d) 143; In re Dancy Drainage Dist., 199 Wis. 85, 225 N. W. 873; Nassau County v. Linger, 165 Misc. Rep. 909, 3 N. Y. S. (2d) 327. In Missouri Real Estate and Loan Co. v. Berry, 202 Mo. App. 242, 216 S. W. 570, the court said in part:

"It must be conceded that a general tax which has primarily for its object the support of the government whereby the government may exist and lives and property may be protected and the pursuit of happiness guaranteed is of greater dignity and more importance than a tax bill issued for public improvements."

In City of Walla Walla v. State, 197 Wash. 357, 85 P. (2d) 676, the court stated:

"The general ad valorem tax upon real property lies at the foundation of the tax structure of the state and its paramount rank is in concept well-nigh traditional.

Such tax is imposed directly upon property and accepted from all owners thereof. It is levied annually at a regular time and operates uniformly according to fixed general rules. In reliance upon the comparative certainty of its collection, public officials administer the affairs of state. That this tax be promptly and fully collected is of supreme and vital importance to the people of the commonwealth."

In Hanson v. Burris, 86 Utah 424, 46 P. (2d) 400, affirmed 297 U. S. 378, 56 Sup. Ct. 511, 80 L. Ed. 728, it was held that a tax deed issued pursuant to a lien for general taxes extinguishes in toto, both past and future assessments in a drainage district. The holding was re-affirmed in Western Beverage Co. v. Hansen (Utah) 96 P. (2d) 1105. See also State ex rel. v. Board, supra.

We must test the statute in question in the light of the foregoing rule, which seems to have a sound basis, and no good reason has been pointed out why we should not adhere to it. It will be noted at once, that if the legislature intended to place a lien for drainage assessments and the lien for general taxes on an equal footing, it did not use very happy language. It would have been easy to have stated that they should be of equal dignity. In Waltom v. City of Portales, 42 N. Mex. 433, 81 P. (2d) 58, it appears that the statute of New Mexico provides that a special improvement lien "shall be on a parity with the tax lien of general taxes, and no sale of such property to enforce any general tax or other lien shall extinguish the perpetual lien of such assessment." Here we find clear and explicit language, and the court held, of course, that the liens were on a parity. Counsel for the drainage district want us to construe the statute involved in the case at bar, as the New Mexico court construed its statute, though the difference is that between day and night. In Magee v. Whitacre, (Nev.) 106 P. (2d) 751, to which our attention has been called, the court held that the legislature

has the right to make irrigation district assessments of equal dignity with general taxes. That, of course, is true. Section 8042, Nev. Compiled Laws of 1929, makes the lien of such assessment superior to the lien of general taxes. It is a broad and sweeping provision. It contains no such provision as our law that general taxes are paramount. Under our statute we are left to pure conjecture as to what the legislature intended. It was stated in State v. Divide County, 68 N. D. 708, 283 N. W. 184, 188, that "by the term 'paramount' is meant superior, pre-eminent, of the highest rank or nature. The lien to which the other is inferior is the paramount lien, and where one is paramount, the other cannot be of equal rank." And we think that the meaning of the term is so well known, that it hardly seems possible that when the legislature used that term, it did not in fact understand its meaning, but meant something less than "paramount." It is clear that, to arrive at the construction given the statute by the drainage district, it is necessary to subtract from the meaning of that term. Furthermore, it is also necessary to add to the meaning of the clause upon which the drainage district relies, namely, the clause that "no sale of such property to enforce any general, state, county, municipal or school tax or other lien, shall extinguish the lien of such assessments." The term "sale," considered without its context, denotes every class of sale, and ordinarily would include a sale mentioned in a subsequent statute, if not inconsistent therewith, and comes within the general scope and policy of the law. Pellish Bros. v. Cooper, 47 Wyo. 480, 38 P. (2d) 607. But in this case, the sale mentioned in the legislative act of 1935 is not consistent therewith. The context may limit the meaning of a term. The only sale provided for when section 122-886 was enacted in 1923 was a sale by the county treasurer. A definite time was given for redemption. A deed could be obtained after

publication of notice, etc. A legislature of 1923 could hardly have had in mind a sale other than that with these attributes and these consequences. The legislature of 1935 provided for the foreclosure of a lien for general taxes in a manner similar to the foreclosure of mortgages by suit, followed by a sale by the sheriff, and a deed to the purchaser conveying all the rights of the parties to the action, subject only to subsequent tax sales and taxes. The legislature in 1935 apparently thought that the sale thus provided is not inconsistent with the sale mentioned in section 122-886, by reason of the fact that it covered a different situation. We are not prepared to say, at this time in any event, that it had no right to distinguish the situations thus presented, even as to parties who became bondholders after the enactment of section 122-886, let alone as to bondholders who became such, as in the case at bar, previously. However that may be, section 122-886 makes no reference to a tax deed, or a deed mentioned in the 1935 legislation. The meaning of the term "sale," on its face, is not so extensive as to forbid that such deed should cut off the lien of a drainage assessment. Western Beverage Co. v. Hansen, (Utah.) 96 P. (2d) 1105. True, as pointed out in the dissenting opinion in that case, if the drainage district had the right to redeem the land until issuance of a tax deed, the last clause, if the ordinary meaning thereof is accepted, does not seem to add anything to the rights of the district. Ordinarily, any person or party interested in the land sold for taxes is entitled to redeem. 61 C. J. 1245. General principles of equity would seem to require that, but we find it stated that "where the statute itself defines 'owner,' persons not within the terms of the statutory definition are not entitled to redeem." 61 C. J. 1246. We have no statute specifically giving the right to the drainage district to redeem from land sold for delinquent taxes to the county. By Section

115-2343, Rev. St. 1931 (amended by chapter 37, Session Laws of 1937), the right of redemption is confined to the "original owner" of the land, which on its face would seem to bar any other party. It was, perhaps, to meet this situation that the legislature enacted the last clause in Section 122-886, supra. In any event, in order to arrive at the meaning given to that section by counsel for the drainage district it is necessary, as already stated, both to diminish the meaning of the term "paramount," and to enlarge the meaning of the term "sale." We think that to do so would be rather arbitrary. We find nothing else in the statute which would seem to lead to the result for which counsel for the drainage district contend. On the contrary, we find that general taxes, consisting of those in favor of the State, the county and municipalities, are not kept distinct, and a provision is made that the proceeds shall be paid to them pro rata. Sec. 115-2345. Here a distinct provision for equality appears. It would have been easy to have added the lien for drainage assessments. But that was not done. Section 122-866, Rev. St. 1931, provides that the sale of property for unpaid drainage assessments shall be kept separate and distinct from the sale for unpaid general taxes. If there are no bidders under the sale for general taxes, the property is sold to the county. Section 115-2340. If there are no bidders for unpaid drainage taxes, a certificate of sale is issued to the drainage district, and it is given the rights of a natural person in that connection. That provision was made in 1923, at the same time that section 122-886 was passed, and seems to show that the two liens shall be kept separate and distinct, for which there would have been no reason, if they were intended to be on an equality. A number of cases have been cited which hold that the lien for special assessments and for general taxes are on a parity, or that a sale for general taxes does not, in

itself, eliminate the lien for special assessments. These cases are based on special statutes. And in many instances these statutes are doubtless based on a valid economic ground, in that, ordinarily speaking, the general taxes are comparatively small, and it is just in such case that the person receiving a tax deed thereunder should assume the payment of the special assessments, or a part thereof. In the case at bar the land is worth, according to counsel, $2000. The lien for general taxes claimed by the county is much more than the value of the land, and even the amount allowed herein is three-fourths of that value. Already, under the decision herein, the general taxes for five years are lost, and if the remainder were to be paid only pro rata along with the drainage assessments, only a little over forty per cent of the taxes due for the last ten years would be paid, assuming that the land would sell for its full value. Considering the case, then, in the light of the practical affairs of life, no persuasive reason exists for applying the rule of the cases relied on in the case at bar, although we do not overlook the fact that the loss to the bondholders is most unfortunate.

Some of the cases holding that the lien for drainage or irrigation assessments are not extinguished by the sale of land for general taxes seem to be based on the holding that the bonds issued for such assessments are general obligations of the district. Among these cases are State ex rel. v. Irr. Dist., 121 Wash. 79, 208 Pac. 27; Judith Irr. Dist. v. Mallott (CCA) 73 F. (2d) 142. It is not contended herein that drainage bonds are general obligations of the district, and that they are not so was substantially held, or at least intimated, in In re Organization of Bench Canal Drainage District, 24 Wyo. 143, 156 Pac. 610. That case involved the drainage district involved in the case at bar. The decision must, accordingly, have been rendered substantially contemporaneously with the issuance of the

bonds of the district in question in this case. The court stated substantially that the assessments against any particular land could not exceed the benefits, which would seem to be the equivalent of a statement that the bonds of the district are not general obligations. Hanson v. Burris, 86 Utah 424, 46 P. (2d) 400, relating to drainage districts, and State ex rel. v. Board, 89 Mont. 37, 296 Pac. 1; Nelson v. Board, 62 Utah 218, 218 Pac. 952; Interstate Trust Co. v. Irr. District, 66 Colo. 219, 181 Pac. 123, relating to irrigation districts, are in accord. See also Sullivan v. Blakesley, 35 Wyo. 73, 246 Pac. 918. Cases, therefore, based on the theory that bonds of a drainage district are a general obligation of the district are not in point herein.

In the case of Town of Soluda v. Polk County, 207 N. C. 180, 176 S. E. 298, it appears that the statutes of North Carolina provide that a special assessment shall be a lien "superior to all other liens and encumbrances." The statutes also provide that taxes should be preferred to any other lien, whether prior or subsequent. Here, accordingly, are inconsistent provisions, making the lien for special assessments and the lien for general taxes both superior liens to all others. And if the court had adopted the argument which counsel for the drainage district make in the case at bar, it should have held these liens to be equal. But it did not do so, but held that the lien for the general taxes is superior to the lien of special assessments, relying upon and discussing at length the rule that general taxes should take precedence over special assessments. The case was followed in Guilford County v. Estates Administration, 213 N. C. 263, 197 S. E. 535. In the case of In re Dancy Drainage District, 199 Wis. 85, 225 N. W. 873, it appears that the statutes of that state provide as follows:

"Assessments for construction, additional assessments, and assessments for repairs and interest thereon

shall be a first lien upon the lands assessed from the time of recording the order of confirmation of same in the office of the register of deeds of the county in which the lands are situated until paid, and shall take precedence over all other liens and mortgages whether accruing prior to the time of the filing of the petition under the drainage district law or not, excepting only liens for general taxes. * * * No tax deed shall cut off any drainage assessment nor shall any drainage assessment deed cut off the tax."

The statute, accordingly, is very similar to the statute in controversy in this case. The court, holding the lien for general taxes to be paramount, said in part as follows:

"We shall not attempt to review the authorities bearing upon this question, because in our view the lien for general taxes is of a distinctly higher order than the lien of any special assessment, and we should not construe any statute as giving precedence to the lien of any special assessment over the lien of general taxes in the absence of a plain legislative command. * * * The legislature was here dealing with priorities. It distinctly provided that the drainage assessments should not be a lien prior to the lien for general taxes. The plain inference is, and the proprieties as well as public policy, dictate that the drainage assessment is a lien subordinate to the lien for general taxes. We concede that the provision * * * that no tax shall cut of any drainage assessment nor shall any drainage assessment deed cut off any tax lends some force to the contention that it was the legislative purpose to make the liens co-equal, but in our view it amounts to nothing more than an ambiguity and does not constitute that plain legislative declaration which we consider necessary to subordinate the lien of general taxes."

In Idaho the Constitution provides that no county, city, town or any property therein should be released from the payment of taxes levied for state purposes. The statute provides that state, county, city and school taxes shall only be discharged by payment, cancellation or rebate. On the other hand, two sections of the stat-

utes provide that special assessments shall take precedence of all other liens. Another section provides that "all unpaid assessments and interest shall be and remain a lien on each lot or parcel of land * * * and such lien shall have priority over all other liens and incumbrances whatsoever." The court held that, notwithstanding these provisions in favor of special assessments, the lien for general taxes is superior to that of the former. Bosworth v. Anderson, 47 Ida. 697, 280 Pac. 227, 65 A. L. R. 1372. In the case of Western Beverage Company v. Hanson (Utah) 96 P. (2d) 1105, it appears that a section of the statute provides as follows:

> "Special assessments made and levied to defray the cost and expense of any work or service contemplated by the provisions of this article, and the cost of collection thereof, shall constitute a lien upon and against the property upon which such assessment is made and levied, from and after the date upon which the ordinance levying such assessment becomes effective, which lien shall be superior to the lien of any mortgage or other encumbrance, whether prior in time or not, except the lien of general taxes, and such lien shall continue until the tax is paid, notwithstanding any sale of the property for or on account of a general or special tax."

This statute, it may be noticed, is very similar to the provision of Section 122-886, Rev. St. 1931, upon which counsel for the drainage district rely, but it is not as positive as our statute in making the lien for general taxes paramount, and could very well be construed, as the minority of the court did, as providing that the liens should be equal. But the majority of the court held that the lien for general taxes is superior to the lien for special assessments. And if the opinion of the majority in that case is correct, we could not very well hold otherwise under a statute such as we have. See also Moe v. Brumfield, 182 Wash. 608, 47 P. (2d) 847. We might add that in many cases it is held

that tax liens take priority in the reverse order of other liens. Cooley, Taxation (4th ed.) Sec. 1242. We have not found it necessary to discuss that rule. But see Fishel v. Denver (Colo.) 95 P. (2d) 1 and cases cited.

■ Counsel for the drainage district pleaded that the bondholders, holding bonds of the district, are necessary parties herein, and he states in his brief that he called the attention of the trial court to that fact, but that the court ignored it. Unfortunately no further reference to the point is made in his brief. And counsel for the county is entirely silent thereon. In Hanson v. Burris, supra, and State ex rel Mallott v. Board of Commissioners of Cascade County, supra, which involve a question similar to that in this case, the contest was with the bondholders. These cases do not discuss as to whether or not it is necessary to make them parties in order to bind them, although it is apparent that it was deemed advisable to do so. In some cases it is held that bondholders will not be bound unless they are made parties. Cases in note 128 A. L. R. 392; Road Imp. Dist. v. Delinquent Bonds, 158 Ark. 58, 249 S. W. 367; Curb & Gutter District v. Parrish, 116 Fed. (2d) 902; King v. Commissioners' Court, 10 Tex. Civ. App. 114, 30 S. W. 257; Dallas County Levee Imp. Dist. v. Ayers (Tex. Civ. App.) 246 S. W. 1113; see also 61 C. J. 1154. These cases involved, directly or indirectly, the invalidity of the bonds. In such cases, of course, it would be necessary to make the bondholders parties to the action. The case at bar involves no such point, and whether or not the bondholders should be brought in depends upon whether or not they were virtually represented by the district. If they were, they were not necessary to be brought in. Kersh Lake Drainage District v. Johnson, 309 U. S. 485, 84 L. Ed. 881, 60 Sup. Ct. 640, 128 A. L. R. 386; Coachella Water District v. Stevens, 206 Cal. 400, 274 Pac. 538. We think they were, although it must be borne in mind that

the point involves due process, on which this court is not the final authority. See in this connection Hansberry v. Lee, 61 Sup. Ct. 115. In deciding the point we have considered not only the interests of the bondholders in this case, but the interests of the State as holder of bonds in drainage districts, to which our attention has been called by the brief of the amicus curiae herein. Drainage districts in this state constitute a corporation "with the right to sue and be sued, to adopt and use a seal, and to have perpetual succession." Section 122-835, Rev. St. 1931. It exercises the functions conferred on them by law, and has power to "do all things and perform all acts necessary to the construction and preservation of the proposed work." Upon them rests the duty to prepare a budget, including the proper amount to meet the principal and interest on the bonds each year, and prepare an assessment roll to that end. Sections 122-884, -885. It becomes the purchaser at sales for delinquent drainage assessments, if there are no bidders, and in that connection has all the rights of natural persons, including the right to sell certificates of sale, or the land after becoming owner thereof. In other words, it is, in a sense, under the law previous to and after 1923, the agent of the bondholders in causing the assessments to be made, and in protecting their interests. Probably the only right which bondholders have, in so far as landholders in the district are concerned, is to compel the district to make assessments. Wilkinson v. Boomer, 217 N. C. 217, 7 S. E. (2d) 491. Our statutes make no provision for a trustee for bondholders, and, so far as appears, there is none for the bondholders in this case. There may be scores of bondholders. Scores of disputes might arise as to particular assessments. It would be an intolerable burden if it were necessary each time to bring in the bondholders. It would seem to be unreasonable that each land-owner who should resist an

assessment, claiming that it has been paid, or that it has been satisfied or released, in whole or in part, in some other manner, should be compelled to make every bond-holder a party to a proceeding in such case. It is altogether reasonable, accordingly, that our statutes, and the bondholders when they purchased the bonds, contemplated that in such case the district should represent their interests at least in cases, in which, as here, the interests of the district in no manner conflict with, but coincide with, the interests of the bondholders. Every point which may be urged by the bondholders may be urged by the district. And while the Arkansas statute under consideration by the Supreme Court of the United States in Kersh Lake Drainage District v. Johnson, supra, is somewhat different from the statutes in this state, and, perhaps, somewhat stronger in compelling the district to protect the interests of the bondholders, we think that on the whole the rule of that case may well be applied in this case, so long as the district acts in good faith and without collusion, which is true in this case.

■ A brief was filed herein by Mr. L. A. Bowman as amicus curiae. He calls attention to the fact that in 1923, when Section 122-886, supra, was passed, the legislature also enacted Chapter 13 of the Session Laws of that year, providing that the state might invest the permanent school fund in drainage district and irrigation district bonds, and that at the present time the state has invested approximately two and one-quarter million dollars in such bonds. Prior to that year drainage district bonds were merely made a lien upon the lands which were assessed, as already stated. Counsel believes that Section 122-886, supra, was enacted partially for the purpose of making investments in drainage district bonds by the state more secure, and hence the liens for special assessments in drainage districts were made of equal dignity with the lien for general

taxes. But we cannot see that the enactment of Chapter 13, supra, can enlarge the meaning of the language used in Section 122-886, supra. See State v. Board of Commissioners, 89 Mont. 37, 296 Pac. 1, 18. We do not, however, pass upon the rights of the State. It is not a party herein. If its lien in favor of the permanent school fund is of equal dignity for which contention herein is made, it cannot alone rest upon the changes made in the lien for drainage and irrigation district bonds. Section 115-2303, Rev. St. 1931, provides that general taxes are made a perpetual lien on the property against all persons or corporations *except* the United States and *this state.* It may be, then, that the State, as trustee for the permanent school fund, is in a different position from that of private parties. In State v. Divide County, 68 N. D. 708, 283 N. W. 184, it apparently was held that a mortgage to the state securing money of the permanent school fund is equal in dignity with the lien for general taxes. In State Land Board v. Schroetlin, 161 Ore. 146, 88 P. (2d) 316, it was apparently held that a mortgage of that character is a paramount lien, superior to that of the lien of general taxes. The contrary was held, apparently, in Board of Commissioners v. State, 125 Okl. 287, 257 Pac. 778, 53 A. L. R. 1128. See also State v. Kilburn, 81 Conn. 9, 69 Atl. 1028, 129 A. S. R. 205; Kieldson v. Barrett, 59 Idaho 466, 297 Pac. 405. Whether these and perhaps other cases would have a bearing on the question of the rights of the State, as trustee for the permanent school fund, and what the actual rights of the State as such trustee should be held to be, the point is not properly before us. In this case we have before us only the rights of private parties, and we think that we are constrained to overrule the contention made by the drainage district herein, and affirm the judgment of the trial court in holding the lien for general taxes to be paramount.

The judgment of the district court is accordingly modified, reducing the amount of plaintiff's lien, as of the date of the judgment in the trial court, to the sum of $1507.23. As so modified, the judgment of the trial court is affirmed.

*Modified and affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.